**ALBANY,**
Oct 1826.

Griswold
v.
Sedgwick.

---

## DANIEL S. GRISWOLD *against* SEDGWICK and others.

If process against the body, out of any court, do not, on its face, authorize an arrest, it is void, and will not protect any person concerned in the arrest ; even the officer to whom directed.

Where DANIEL S Griswold was arrested on process of attachment, issued out of the equity side of the circuit court of the United States, against SAMUEL S. Griswold ; held,

TRESPASS, for false imprisonment ; tried at the New York circuit, *March* 15*th*, 1826, before DUER, C. Judge ; when the following facts appeared :

The plaintiff, DANIEL *S. Griswold*, was arrested under process, purporting to have been issued out of the equity side of the *United States* circuit court for the southern district of *New-York*, directed to the marshal of that district, commanding him to take the body of SAMUEL *S. Griswold*. The process was issued by the Messrs. *Sedgwicks*, two of the defendants in this suit, as solicitors and counsel for *Samuel Hill :* and the arrest was made by *Reid*, as deputy of *Morris*, the marshal ; these latter being also defendants in this suit.   As soon as the marshal discovered the mistake in the name, and before *Griswold* was taken to prison, he sent for the Messrs. *Sedgwicks*, who immediately assented to the discharge of the plaintiff, he being then present, although it was understood and admit-

that an action of false imprisonment, lay by DANIEL *S. Griswold* against the marshal, his deputy, and the solicitors concerned in the arrest ; and this, although DANIEL *S. Griswold* was the person intended.

Otherwise, of an execution against one by a wrong name, who appears in the suit, and omits to plead the misnomer in abatement ; or, *it seems*, where he is known as well by the one name as the other.

It is no objection to process issued to enforce an order of the circuit court of the United States, that it recites the order as having been made, on some day not appearing necessarily to be within the statute term of the court.   It will be intended that the term continued to that day, unless the contrary appear, the duration of the term not being limited by statute.

Whether process issuing out of a court of equity, be according to the course and practice of that court, is a question which cannot be tried collaterally, in an action at law. If it be irregular, the proper course is to move the court out of which it issued, to set it aside.

Superior courts, either of law or equity, will not interfere with each other's proceedings on the ground of irregularity.

ted, that he was the person intended to be arrested on the writ or process. He was accordingly discharged; and this suit was against the defendants, the Messrs. *Sedgwicks*, *Morris* and *Reid*, all the parties instrumental in his arrest.

The process recited, that on the 21*st* day of *February*, 1824, by an order made in the circuit court, by *Wm. P. Van Ness*, one of the judges of that court, in a cause there between DANIEL S. *Griswold*, complainant, and *Hill*, defendant, that *Griswold* pay to the clerk of that court $1,200, in 10 days after notice of the order ; and " whereas the said SAMUEL S. *Griswold*" had neglected to comply with the order, though more than 10 days had elapsed, it commanded the marshal to take *the said* SAMUEL S. *Griswold*, &c., and keep him in custody, till he should perform the order, or until the court should make order to the contrary. The process was tested the 2*d* day of *February*, 1824, and returnable the 1*st Monday* of *March*. The plaintiff was arrested, discharged as before mentioned ; and the process returned by the marshal *non est*, *&c.*

On this evidence, the counsel for the defendants moved for a nonsuit, which was granted by the judge, and the plaintiff excepted.

On the bill of exceptions,

*H. W. Warner*, for the plaintiff, now moved to set aside the nonsuit, and for a new trial. He said the plaintiff is not the person named in the precept of the writ. It is not sufficient that he was the person intended. (6 *T. R.* 234. 8 *East*, 328. 2 *Taunt.* 399. 2 *Campb.* 270. *Doug.* 40. 1 *B. & A.* 647.)

But if the plaintiff had been rightly named, it appears by the writ itself, that he was in no default under the order recited. No notice of the order is mentioned. And the writ is tested the 2*d* of *February*, at a time before the order was made. The teste is out of term ; and the writ thus being irregular on its face, will not protect the officer, or any one concerned in its execution. Taken as a whole, the writ is unknown to the law of the land ; and obvious-

ALBANY,
Oct. 1826.

Griswold
v.
Sedgwick.

ly not necessary for enforcing the order. The court will take notice of the practice of the court of chancery. (1 *Chit. Pl.* 224. 2 *Co. Rep.* 18. 16 *East,* 39.) This was neither an attachment nor execution. The plaintiff could not have had any sufficient notice of the order, and the court was entirely without jurisdiction. The course of proceeding on the equity side, is regulated by rules of the *U. States* supreme court, pursuant to statute. (See rules, 7 *Wheat. Rep.* v. to xiii.) By rule 33, where they do not apply, the English practice governs. (And vid. 3 *Wheat.* 213.) That practice will be found in *Newland's Treatise,* under the head, *Execution of Decrees.* The parties should shew the proceedings to be regular, and according to the course of the court. (2 *Wils.* 224.) Though it may be otherwise, where the defendant has appeared, and had a chance of defence. There, even a misnomer in the execution, will not subject the plaintiff to an action, if it follow the name in the record. (2 *Str.* 1218.) It will be seen by *Newland,* already cited, that this process could not be regular as an execution. It was equally irregular as an attachment. (1 *Jac. & Walk.* 637.) It is not an order of a circuit court. This requires the concurrence of a circuit and district judge. It was a mere order of judge *Van Ness,* at his chambers in vacation. It does not appear for whose benefit the money was to be paid into court. The court is of a limited and special jurisdiction, (5 *Cranch,* 185,) and should shew their authority clearly, to issue such a writ. The jurisdiction of every court may be inquired into and impeached. (4 *Cowen,* 294, 5.) If there be a want of jurisdiction, the process will protect nobody.

*R. Sedgwick* and *Sullivan,* contra. The writ was founded upon, and authorized by the order. The plaintiff was, at first, rightly named ; and the wrong name afterwards may be rejected as surplusage. On the whole face of the process, the court can see that the right man has been taken. It recites the contempt ; and the teste is obviously a mere clerical mistake, as the court cannot help see-

ing. It is plain from the writ itself. It recites that more than 10 days had elapsed from the making of the order.

As to the misnomer; admitting it to be a fatal one, the cases cited to show that false imprisonment will lie, are of mesne process; and even in respect to this, they are not without qualification. Suppose the defendant being misnamed, appears by his right name, as he may do, (1 *B. & P.* 645,) the suit may go on against him, by his true name, to judgment and execution. So if he appear in any way, and do not plead the misnomer in abatement. (2 *Str.* 1218.) Clearly, in neither of these cases would false imprisonment lie. The proceedings become good *ab initio;* and in the latter case, it is settled that execution may go by the wrong name. (*id.*) In general, the distinction is between mesne and final process. A misnomer in the latter, will not subject to an action for the arrest. (*id.* 1 *Mass. Rep.* 76.) The mistake is amendable. (1 *Brod. & Bing.* 188.) The process is not merely void. The *U. States* statute of jeofails, is even broader than our own or the English. (*Ing. Dig. Abatement.*) If this court are, as contended, to look into the practice of the circuit court of the *United States*, it will be seen that the writ would have been at once amended on motion there.

But this court will not look into the proceedings, with a view to see whether they were regular or irregular, void or voidable. The circuit court might have been continued by adjournment from its term to the teste day, and to a time long after the order and arrest were made. Jurisdiction will be intended till the contrary is shewn. A court of equity is always open. It is not confined to particular terms; and it has power to modify its process to suit the exigencies of each case. How is this court to know what process is held to be proper there? It is only in the absence of any practice of their own, that the English practice is to govern. How is this court to know that the English practice is not abolished in any particular case, and a new one substituted? If this process had issued out of the court of chancery of this state, the present suit would have been arrested by injunction; upon the princi-

ple that another court have a right to, and will protect all those who act under its process ; or will, at least, take the supervision of its own process, and the conduct of those who act under it, to itself. (*Eden on Inj.* 27. *2 Dick.* 619. 1 *Jac. & Walk.* 638.) This is right ; and what every superior court insists upon. It is well settled in this court, that no suit will lie, grounded on the irregularity of process, until it is set aside on motion. (*Reynolds* v. *Corp & Douglass, 3 Caines' Rep.* 267.) On applications to set aside writs for any defect, nothing is more usual than for the court to order an amendment, without any formal cross-motion for the purpose ; or, if the motion be for irregularity, they will require the party moving, to stipulate that he will not bring any action. One court cannot decide on the regularity of process issuing from another court, over which it has no control, until that process is set aside. The defendants are officers ; and are justified by the process. At any rate, it being in existence, never set aside or avoided in any way, they are protected against an action of false imprisonment. If liable to any action, it must be founded on an abuse of the process, and should have been *case*, not *trespass*.

*Curia, per* SUTHERLAND, J. If the process, on the face of it, did not authorize the arrest of the plaintiff, then it was irregular and void as against him, and can afford no justification to any of the parties concerned in the issuing or execution of it. In such a case, it is not necessary that the process should be set aside before an action can be sustained ; nor is it material out of what jurisdiction it purports to have been issued. The defendants justify the arrest of *Daniel S. Griswold*, under an execution against *Samuel S. Griswold*. The execution itself may be regular ; there may be no ground for setting it aside. *A.* is arrested by the defendants, and calls upon them to show their authority for the arrest. They produce as their authority, an execution against *B.*, issued out of the circuit court of the *U. S.* for the southern district of *New-York*. We do not question the jurisdiction of that court, nor the

validity or regularity of any of its proceedings, when we decide that this is no justification for the arrest.

It is settled by repeated adjudications, that an officer cannot justify the taking of the goods (much more the person) of *A.*, under process against *B.*, although it be averred that *A.* and *B.* are the same person ; unless the party appeared and had an opportunity of pleading the misnomer in abatement; but omitted to do it. Thus, in *Cole* v. *Hindson and others*, (6 *T. R.* 234,) the goods of *Aquila Cole* were taken under a distringas against *Richard Cole.* To an action of trespass brought for the taking, the defendants pleaded that the plaintiff, *Aquila Cole*, being indebted to two of them, they sued out against the said *Aquila*, by the name of *Richard*, a writ ; and the said *Aquila* not appearing, &c., a distringas was issued, commanding the sheriff to distrain *Richard Cole, meaning the said Aquila Cole, &c.* Upon demurrer, the plea was held to be bad. And lord *Kenyon* remarked, that the defendants were not justified in seizing the goods of *Aquila Cole*, under a distringas against *Richard Cole*, and that the averment in the plea, that *Aquila* and *Richard* are the same person, did not assist them, as they had not also averred that the plaintiff was known as well by one name as by the other.

So in *Shadgett* v. *Clipson*, (8 *East*, 328,) *Josiah Shadgett*, the plaintiff, was arrested upon a *latitat* issued against him, wherein he was called by the name of *John Shadgett.* The plea averred that the writ was issued against *Josiah*, by the name of *John.* This was held to be no justification to the officer who made the arrest, in an action for false imprisonment. Lord *Ellenborough* says, process ought regularly to describe the party against whom it is meant to be issued ; and the arrest of one person cannot be justified under a writ sued out against another.

In *Wilkes* v. *Lorck*, (2 *Taunt.* 400,) it was held by *Lawrence*, J. that the sheriff was liable to an action of false imprisonment, for arresting a defendant by a wrong *christian* name.

*Scandover* v. *Warne*, (2 *Campb.* 270,) and *Morgans* v. *Bridges*, (1 *B. & A.* 647,) are to the same effect.

In *Crawford* v. *Satchwell*, (2 *Str.* 1218,) it was held that if a person sued by a wrong christian name, omits to take advantage of the misnomer, by a plea in abatement, but suffers judgment to be entered, he shall not have an action of false imprisonment against the sheriff, for arresting him upon a *capias ad satisfaciendum*, issued upon the judgment. Lord *Kenyon*, in *Cole* v. *Hindson*, already cited, adverts to this case, and says, the party had appeared in the original action, and done an act to avow that he was sued by the right name. That was also the case in *Smith* v. *Bowker*, (1 *Mass. Rep.* 76.)

No distinction is taken in these cases, between an arrest upon mesne and final process, and none is perceived by the court. In this case, the process was in the nature of an attachment, and the plaintiff has had no opportunity of taking advantage of the misnomer, by plea in abatement.

The case of *Reynolds* v. *Corp*, (3 *Caines*, 267,) is not in collision with the cases already adverted to. *Reynolds* had been surrendered by his bail, and was subsequently discharged by a supersedeas, for want of being charged in execution in due time. A *ca. sa.* was afterwards issued upon the judgment, on which he was taken and imprisoned ; for which he brought an action of false imprisonment against the plaintiff in the execution, and the attorney who issued it. It was held that the action would not lie ; the judgment remaining valid, and nothing appearing on the record to show that a *ca. sa.* could not regularly be issued. The court say, the process was voidable only, and not void ; and nothing appearing on the face of the record or of the execution, to show that it had been issued irregularly, the plaintiff should have applied to the court, and had the writ set aside before he brought his action ; that they would not decide upon its validity in that collateral way. (*Per Kent, Ch. J.*)

*Thompson*, J. says, " I am inclined to think the execution is voidable only. It appears regular upon the face of it ; it is warranted by the judgment, and is to be avoided

by some matter *dehors* the record, and which, I think, cannot be taken advantage of in this collateral way."

In the case now before us, it is apparent on the face of the process, that it did not authorize the arrest of *Daniel S. Griswold*, the present plaintiff. There is no necessity, therefore, for any inquiry *dehors* the writ itself; and an action may be sustained by the plaintiff for the arrest, without having procured the writ to be set aside.

But it was also contended by the plaintiff's counsel, that the order itself, in obedience to which the writ purports to have been issued, and which is recited in it, was absolutely void; 1. As having been made at the chambers of the judge in vacation; and 2. As being against the settled and established mode of proceeding in such cases in the English court of chancery.

The first objection seems to have no foundation in fact. There is nothing on the face of the order, as recited in the writ, which shows *where* it was made; and it is expressly recited to have been made *in the circuit court for the southern district of New-York.*

But it is said that the 21*st* of *February*, when the order was made, was not a day in term, and it must, therefore, have been made at chambers. The time for the commencement of the terms of that court, is fixed by law; but I am not aware that the duration of the terms is limited. The 21*st* of *February* may, therefore, have been a day in term.

As to the other ground of objection, that the order is not in conformity to the established mode of proceeding in courts of equity, it is a sufficient answer, to say that that is a question not to be tried collaterally in an action at law. If the order was unadvisedly made, against the established practice, not only of the courts of equity in England, but of the very court in which it was made, as the objection seems to assume, application should have been made to that court, to vacate or set it aside.

The court had jurisdiction of the person of the plaintiff, and of the subject matter in relation to which the order was made; for it was made in relation to a suit pending in

that court, in which the plaintiff was a party.   The regularity of the order is not to be tried or inquired into in this court.   Superior courts, either of law or equity, will not interfere with each other's proceedings, on the ground of irregularity.   (3 *John. Ch. Rep.* 275.)   And cases are to be found, in which courts of equity have enjoined suits at law, brought for executing the process of those courts irregularly issued.   (*Baily* v. *Devereux*, 1 *Vern.* 269.)   In *Frowd* v. *Lawrence*, (1 *Jac. & Walk.* 636,) an attachment had been irregularly issued, upon which the defendant was arrested.   He applied to the court of chancery, and procured it to be set aside ; and then brought his action at law for the false imprisonment.   The court of chancery, after much deliberation and inquiry, stayed the suit at law ; holding, that though the party might be entitled to compensation for the arrest, he must seek it by application to that court, and not by suit at law.   The case in 1 *Vernon*, 269, and also *May* v. *Hook*, before lord *Bathurst*, cited in *Dove* v. *Dove*, (2 *Dick.* 619,) were relied upon as authorities for this decision.   It is not necessary for us to express an opinion upon the principle assumed in these cases.   They are cited merely for the purpose of showing the extent to which courts have gone, in denying the right or propriety of one court to inquire into, or try the regularity of the process or proceedings of another court of equal dignity.

The process in this case was undoubtedly intended as an attachment for a contempt in disobeying a previous order of the court.   It recites that previous order, and that the plaintiff had neglected to comply with it ; and therefore commands the marshal *to take his body*, &c.   It may not be formal.   The court out of which it issued, might, upon application, vacate or modify the order, or the attachment.   But I see no ground for saying that either the one or the other is absolutely void.

The attachment, on the face of it, did not authorize the arrest of the plaintiff ; and on that ground, and that alone, I think the action was technically sustained ; and that the plaintiff ought not to have been nonsuited.

Nonsuit set aside.