EMMA CONDIT SMITH, as Testamentary Guardian, etc., Appellant, *v.* CENTRAL TRUST COMPANY of New York et al., Respondents.

1. COURTS — ADJUDICATION OF CREATION OF TESTAMENTARY TRUST. When a court of equity, in a proceeding for that purpose, appoints a person trustee "to execute the trusts mentioned and declared" in a will, it necessarily adjudges that a trust was created by the will.

2. JUDICIAL PROCEEDINGS OF ANOTHER STATE — JURISDICTION. An undisturbed adjudication by a court of another state, that a trust was created by a will, as the basis of the appointment of a trustee, is binding upon the courts of this state, in an action attacking the trusteeship, by force of the constitutional and statutory provisions requiring the courts of each state to recognize the judicial proceedings of other states (U. S. Const. art. 4, § 1; U. S. R. S. 170, § 905), providing the court had jurisdiction to make the adjudication.

3. WANT OF JURISDICTION. A judgment of a court of another state is always open to impeachment for the want of jurisdiction over the subject-matter or the parties.

4. JURISDICTION OF SUBJECT-MATTER. The Court of Chancery of New Jersey has jurisdiction of the subject-matter of the appointment of a testamentary trustee, when the fundamental question for determination is whether a trust was created by the will of a testatrix who resided in that state at the time of her death, and the beneficiaries (being her infant children) lived there, and the will was executed and proved, and the estate settled there.

5. JURISDICTION OF PARTIES — PRESUMPTION. When the record of a court of general jurisdiction of another state (such as the record of the Court of Chancery of New Jersey in a proceeding for the appointment of a testamentary trustee for infant beneficiaries) discloses nothing in regard to the service of notice, and no evidence is given upon the subject, and there is nothing, either of record or otherwise, to show that every step essential to jurisdiction was not duly taken, it will be presumed that the court had jurisdiction of the persons of the parties, acquired by the service of all notices necessary.

6. COSTS. A case for the payment of costs of appeal, by a testamentary guardian personally, is presented where the guardian has persisted in unsuccessfully litigating the right to the control of securities held by a testamentary trustee, after continuous failure in many other actions having the same object.

*Smith* v. *Central Trust Co.*, 12 App. Div. 278, affirmed.

(Argued October 28, 1897; decided November 23, 1897.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered December 31, 1896, which affirmed a judgment in favor of defendants entered upon a decision of the court on trial at Special Term.

This action was brought by the plaintiff, as the testamentary guardian of Louise Condit and Sallie Barnes Smith, infants of tender years, to compel a corporation which is alleged to hold certain securities in trust for them, to account for the interest by it collected thereon and for other relief.

In July, 1890, Mrs. Sallie L. D. B. Smith, a resident of New Jersey, died, leaving a husband, said two daughters, a large amount of personal property and a will, by which, after some minor bequests, she gave one-half of the residue of her estate to her husband, George Condit Smith, and the other half to her children " absolutely " in equal shares, and directed that her husband should " hold the same in trust for such child or children during its or their minority, managing and investing the same according to law and from time to time applying such parts of the income thereof to the support, maintenance and education of such child or children, as he may think advisable; the determination of my husband as to such management, investment and application of income shall be final and without appeal or question, as I have full confidence in his good sense and discretion." She appointed her husband as her sole executor, and expressed the desire that he should " not be required to give any security for the performance of his duties, either as executor or as trustee." This will was admitted to probate before the surrogate of Essex county, New Jersey, on the 28th of July, 1890, and letters testamentary were issued thereon to George Condit Smith, who, after finally accounting before said surrogate and in December, 1890, and May, 1891, deposited with the defendant, the Central Trust Company of the city of New York, the securities in question, consisting of railway bonds, upon the condition expressed in a writing signed by him as " executor and trustee," that it should act as custodian of such securities until his children should become of age, collect the interest thereon

and pay it to him while he lived, and after that to their guardian to be appointed by his will or by some court of competent jurisdiction.   As the children became of age the securities were to be delivered to them.   After changing his residence from the state of New Jersey to the state of New York, he died in New York city in October, 1894, leaving a will whereby he appointed the plaintiff, his second wife, the guardian of his children, who resided with him in this state up to the time of his death.   His will was admitted to probate in the county of New York on the 31st of January, 1895.   In the meantime, and on the 16th of October, 1894, upon the petition of said infants through their uncle, as their next friend, the Court of Chancery of the state of New Jersey appointed William Pennington, of the city of Paterson in that state, trustee for said infants " in the room and stead of George Condit Smith, deceased, to execute the trusts mentioned and declared in and by the last will and testament of Sallie Smith, deceased, * * * with all the rights, powers, duties and privileges incident to the appointment."   Mr. Pennington promptly qualified by giving two bonds in the penalty of $60,000 each, and thereupon notified the trust company not to deliver the securities, or pay the income to any one except himself.   On the fourth of April, 1896, this action was commenced by the plaintiff, as such testamentary guardian, against the Central Trust Company alone, but on the tenth of August following, pursuant to an order of the Appellate Division, the summons was so amended as to include Mr. Pennington as such trustee.   (7 App. Div. 278.)   The relief demanded by the amended complaint was that said Pennington should be adjudged to have no interest either in the bonds or income, and that the defendant company should be required to account for and pay over to the plaintiff all accumulations of interest in its possession derived from said securities.   Both defendants answered, setting up the foregoing facts, in substance, and Mr. Pennington demanded that the complaint should be dismissed, while the trust company asked for an adjudication in respect to the conflicting claims of

the other parties to the action. The trial judge dismissed the complaint and adjudged that the trust company held the bonds subject to the order of William Pennington, as trustee, and that it should pay over to him, as such, the accrued interest. The Appellate Division unanimously affirmed the judgment on the ground that the order made by the Chancellor of New Jersey appointing Mr. Pennington as trustee was valid and could not be attacked in this state for irregularity, but only for want of jurisdiction. (12 App. Div. 278.) The plaintiff thereupon appealed to this court.

*Alex. Thain* for appellant. The Special Term was in error in assuming that the Appellate Division had already decided that the fund in question was held under a trust created under the laws of the State of New Jersey. (*Smith* v. *Central Trust Company,* 7 App. Div. 278; *Hoffman* v. *Wight,* 1 App. Div. 514; *Wilcox* v. *Jackson,* 13 Pet. 511.) The property in question is in the state of New York, and its owners reside here, subject to the jurisdiction of the courts of this state. (Story on Conflict of Laws, §§ 481, 500, ·504; *Parsons* v. *Lyman,* 20 N. Y. 103; *Channel* v. *Chapen,* 46 Ill. App. 234; *Frank* v. *Morehead,* 31 Atl. Rep. 1016; *Woodbridge* v. *McKenna,* 8 Fed. Rep. 650; *Williams* v. *Ritchie,* 3 Dill. 406; *Ruckman* v. *Palisade Co.,* 1 Fed. Rep. 367; *Leonard* v. *Putnam,* 51 N. H. 247; 12 Am. Rep. 106; *Lacy* v. *Williams,* 27 Mo. 280; *Herring* v. *Goodson,* 43 Miss. 392; *Ware* v. *Coleman,* 6 J. J. Marsh. [Ky.] 198; *Sears* v. *Terry,* 26 Conn. 273; *Morrell* v. *Dickey,* 1 Johns. Ch. 153.) No trust was created by the will of Mrs. Sallie Smith. (*Weiland* v. *Townsend,* 33 N. J. Eq. 393; 2 Washb. on Real Prop. 162, 163, 166; 2 Perry on Trusts, § 304; Willard's Eq. Juris. [Potter's ed.] 410; *Lanning* v. *Sisters of St. Francis,* 35 N. J. Eq. 392; *Rice* v. *Harbeson,* 63 N. Y. 493.) The use of the word "trust" did not necessarily indicate an intention to create a trust, other than was implied in the appointment of a guardian of the estate. (*In re Hawley,* 104 N. Y. 250; 2 Story's Eq. Juris. § 1330; 2 Perry on Trusts, § 298; Redf.

on Sur. 271; *Bacon* v. *Bacon*, 4 Dem. 5; *In re Embree*, 9 App. Div. 602; *Cook* v. *Fountain*, 3 Swanst. 585.) The authority to the husband was at most a naked power peculiar to himself, which did not survive. (Willard's Real Estate [2d ed.], 250, 251; 2 Wash. on Real Prop. 322, § 23; 4 Kent's Comm. 326; 2 Perry on Trusts, §§ 496, 499; *Chambers* v. *Tulane*, 1 Stock. [N. J.] 146; *Conklin* v. *Egerton's Admr.*, 21 Wend. 432; 25 Wend. 224; *Henderson* v. *Henderson*, 113 N. Y. 1; *Stoutenburgh* v. *Moore*, 10 Stew. [N. J.] 63; *Brush* v. *Young*, 4 Dutch. [N. J.] 237; *Lanning* v. *Sisters of St. Francis*, 8 Stew. [N. J.] 392.) Defendant Pennington's appointment was procured by fraudulent misrepresentation and concealment of material facts. (*Titley* v. *Wolstenholme*, 7 Beav. 425; *Dias* v. *Brunell's Exr.*, 24 Wend. 9.) The complaint should not in any aspect of the case have been dismissed, as plaintiff is entitled to know where her ward's property is, what its condition and of what it consists, regardless as to which of the defendants may hold the securities. (Tyler on Infancy, 260, § 175; *Lane* v. *Mickle*, 46 Ala. 600; *Covington* v. *Leake*, 76 N. C. 363; *Field* v. *Schieffelin*, 7 Johns. Ch. 150; *Beecher* v. *Crouse*, 19 Wend. 306; *Van Camp* v. *Searle*, 147 N. Y. 150; *Curtis* v. *Smith*, 6 Blatch. 537.)

*John Brooks Leavitt* for respondents.    The appeal is frivolous, as no question of law is presented thereby, and the will under discussion has been construed adversely to plaintiff's claims by many different courts. (*Pennington* v. *Smith*, 69 Fed. Rep. 188; *Smith* v. *C. T. Co.*, 7 App. Div. 278; *Pennington* v. *Smith*, 75 Fed. Rep. 157; *Smith* v. *Pennington*, 12 App. Div. 378; *Smith* v. *Cent. Trust Co.*, 12 App. Div. 278.)

VANN, J.    When the Court of Chancery of the state of New Jersey appointed Mr. Pennington trustee for said infants in the place of their deceased father " to execute the trusts mentioned and declared " in their mother's will, it adjudged that a trust was created by that will; for that question had to be decided in order to determine whether a trustee should be

43

appointed. (*Caujolle* v. *Ferrie*, 13 Wall. 465, 472.) It was the foundation upon which the decision to appoint a trustee necessarily rested. If that court had jurisdiction to make the determination it is binding upon us, even if we are of the opinion that, in fact, no trust was created, but simply a power, because the Federal Constitution provides that "full faith and credit shall be given in each state to the  *  *  * judicial proceedings of every other state," and that Congress may by general laws prescribe the method of proving such proceedings and the effect thereof. (U. S. Cons. art. IV, § 1.) Pursuant to this authority, Congress has enacted that judicial proceedings in another state shall have the same effect in every court within the United States as they have by law or usage in the courts of the state in which they were taken. (U. S. R. S. p. 170, § 905.)

A judgment rendered by the courts of another state, however, is always open to impeachment for the want of jurisdiction either over the subject-matter or the parties. Jurisdiction over the subject-matter of an action or judicial proceeding, as was held in *Hunt* v. *Hunt* (72 N. Y. 217), is the power to adjudge, concerning the general question involved therein, and is not dependent upon the state of facts which may appear in a particular case, or to the ultimate existence of a good cause of action. The subject-matter of the proceeding in question before the Chancellor of New Jersey was the existence of a trust and the appointment of a trustee thereunder. Whether a trust was created by the will of the testatrix, who not only resided in the state of New Jersey at the time of her death, but her children lived there, and her will was executed and proved, and her estate settled there, was clearly a question that the Chancellor had the power to decide, and if he erred in his decision the remedy was by appeal, or by a motion before that judge to vacate his own order. The latter remedy appears to have been recently resorted to by the plaintiff, but her petition, as testamentary guardian of said infants, addressed to the Chancellor, was dismissed by him with costs, upon the ground, as stated in a certified copy of the order presented

upon this appeal, that a trust was created by the will of Mrs. Smith, and that the trustee previously appointed was a suitable and proper person for the position.

It is insisted, however, that this determination may be reversed upon the appeal that is said to have been taken therefrom, and that hence it is our duty to decide whether the Court of Chancery, as represented by the Chancellor, had jurisdiction of the persons of the infants when the former order was made. Jurisdiction in this regard is challenged, not upon the ground that no notice was served upon them personally, but because, as it is alleged, no notice was served upon the person with whom they resided. It has been held, however, by this court, that "in a proceeding simply for the appointment of a trustee to execute trust duties and powers, for the faithful performance of which security is always required, it is a matter of discretion with the court as to whom notice shall be given. The court in which the application is made may determine and direct in that regard; the appointment being always open to review on the application of any party interested, and who may not have been informed of the proceeding." (*Matter of Robinson*, 37 N. Y. 261, 264.) But, as the existence of a trust was not conceded, let us assume not only that notice to the beneficiaries was essential to jurisdiction, but also that such notice should have been served upon the plaintiff, as the person with whom the infants lived, while both she and they were within the state of New Jersey. Upon this assumption, as the record before us is silent upon the subject, resort must be had to presumptions. The plaintiff in her complaint simply alleges, upon information and belief, that Mr. Pennington, although claiming to be trustee, is not such and has no interest in the securities or income. The defendants allege that he is trustee, and attach to their respective answers a copy of the will and of the order of appointment; which, together with the petition of the next friend and the affidavits and letters of relatives accompanying, were all the evidence relating to the subject introduced upon the trial, except the certificate of the clerk that the

trustee had given the bonds required by the order. There is nothing to show that these papers constitute the entire record upon which the Chancellor acted, or what notice, or that no notice was given to the beneficiaries, or to any person for them. No offer was made by either party to show notice or the want of notice, and the plaintiff did not object to the petition or order upon the ground that notice was not given or that it did not appear whether notice was given or not. The only recital in the order is as follows, viz.: "Upon reading and filing the petition in this case, and upon hearing the statements of counsel, it is ordered," &c. Thus we have an order, made by a court of general jurisdiction, with proof of some papers upon which it was founded, but with no proof that they were the only papers, and nothing, either of record or otherwise, to show that every step essential to jurisdiction was not duly taken. Under these circumstances, the presumption is that a court of general jurisdiction proceeded to judgment only after duly acquiring jurisdiction by the service of all notices actually necessary. (*Yates* v. *Lansing*, 9 Johns. 396, 437; *Shumway* v. *Stillman*, 4 Cow. 292, 296; *S. C.*, 6 Wend. 447; *Foot* v. *Stevens*, 17 Wend. 488; *Pacific Pneumatic Gas Co.* v. *Wheelock*, 80 N. Y. 278; 2 Black on Judgments, § 835.) As was said by the late Court of Errors in *Yates* v. *Lansing* (*supra*), "An inferior court shall, when questioned, show that it acted within its jurisdiction. Whereas in courts of general jurisdiction, jurisdiction is presumed until the contrary is shown." (p. 437.) The same rule is stated in an early English case in these words: "The rule for jurisdiction is, that nothing shall be intended to be out of the jurisdiction of a superior court but that which specially appears to be so; and, on the contrary, nothing shall be intended to be within the jurisdiction of an inferior court but that which is so expressly alleged." (*Peacock* v. *Bell*, 1 Saund. 73, 75.) The Supreme Court of the United States, speaking upon the same subject in an important case, said: "A superior court of general jurisdiction, proceeding within the general scope of its powers, is presumed to act rightly.

All intendments of law in such cases are in favor of its acts. It is presumed to have jurisdiction to give the judgments it renders until the contrary appears; and this presumption embraces jurisdiction not only of the cause or subject-matter of the action in which the judgment is given, but of the parties also. * * * But the presumptions which the law implies in support of the judgments of superior courts of general jurisdiction only arise with respect to jurisdictional facts concerning which the record is silent. Presumptions are only indulged in to supply the absence of evidence, or averments, respecting the facts presented. They have no place for consideration when the evidence is disclosed or the averment is made." (*Galpin* v. *Page*, 18 Wall. 350, 365.) When the record of a court of general jurisdiction discloses nothing in regard to the service of process or notice, and no evidence is given upon the subject, jurisdiction over the person will be presumed, because the record itself imports sufficient proof of jurisdiction without disclosing the different steps by which such jurisdiction was acquired. When it affirmatively appears, however, that any essential step was omitted, the presumption in favor of jurisdiction is destroyed and a presumption against jurisdiction at once arises. Within these rules, which are old and familiar, as there is nothing in the record, or elsewhere, so far as appears, to show that the Court of Chancery did not have jurisdiction of the person, and, as we have seen, it clearly had jurisdiction of the subject matter, effect must be given to the usual presumption that obtains in such cases by affirming the judgment appealed from.

The plaintiff has shown great zeal and persistence in her efforts to obtain control of the securities in question, as appears by many reported cases which record continuous failure on her part. (*Pennington* v. *Smith*, 69 Fed. Rep. 188 ; 75 Fed. Rep. 157 ; 78 Fed. Rep. 399; *Smith* v. *Central Trust Co.*, 7 App. Div. 278; *Smith* v. *Pennington*, 12 App. Div. 378.) Under these circumstances we think that the costs of this appeal should be paid by her personally.

All concur.

Judgment affirmed.