STUYVESANT v. WEIL.

(Supreme Court, Appellate Division, First Department. June 9, 1899.)

1. JUDGMENTS—FORECLOSURE — PROCESS—APPEARANCE—SURPLUS PROCEEDINGS —ESTOPPEL.

　　A default mortgage foreclosure judgment, void for misnomer of defendant in the summons and complaint, is not validated by his appearance, after sale and execution of the referee's deed, in proceedings to recover the surplus fund and consent to the distribution of the proceeds; the elements of estoppel being wanting.

2. SAME—AMENDMENT—MARKETABLE TITLE.

　　Where a mortgagor, summoned in foreclosure under the wrong Christian name, fails to appear, and the court amends the summons and all other papers ex parte, as authorized by Code Civ. Proc. § 723, the title acquired under the sale is in sufficient doubt to justify a purchaser in refusing to accept it.

3. SAME—COLLATERAL ATTACK—JURISDICTION.

　　The rule that a judgment showing jurisdiction cannot be impeached collaterally does not apply, where the record affirmatively shows want of jurisdiction.

Appeal from special term, New York county.

Suit by Augustus Van Horne Stuyvesant against Ralph Weil. There was a decree for defendant (57 N. Y. Supp. 592), and plaintiff appeals. Reversed.

Argued before McLAUGHLIN, PATTERSON, O'BRIEN, and INGRAHAM, JJ.

　Lucius H. Beers, for appellant.

Edward W. S. Johnston, for respondent.

O'BRIEN, J. This suit in equity was brought to compel the defendant to specifically perform an agreement whereby he was to convey title to the plaintiff to certain premises, or, if unable to convey a marketable title thereto, to return a partial payment of $2,500 made by the plaintiff to him to pay expenses incurred. The agreement referred to is set forth in the complaint, and shows that the defendant agreed to sell the plaintiff certain real estate at 741 and 743 Amsterdam avenue and 151 West 96th street, for which $57,500 was to be paid,—$2,500 on signing the contract, $43,000 by taking the premises subject to an existing mortgage, and the balance on delivery of the deed. It is agreed that the $2,500 payment was made, and that the amount of the expenses incurred was $330.80. The questions at issue relate to whether or not the defendant had and was able to give good title, the assertions in the complaint being (1) that the defendant's title is defective, inasmuch as the defendant claims under a certain mortgage foreclosure wherein the owner of the equity of redemption "was not named as a party defendant in either the summons or the complaint," and did not appear therein prior to the entry of judgment, and the court therefore had no jurisdiction of the person of said owner; (2) that notice of pendency of said foreclosure was not filed, as required by statute, against such owner; (3) that the judgment was not entered in the foreclosure action in accordance with statute.

Code Civ. Proc. § 1637. A statement of facts bearing on the questions presented was submitted by stipulation, which, in substance, shows as follows: The premises were originally owned by Edward L. Lawrence, who on May 2, 1895, executed a mortgage for $43,000 to Simon Pretzfeld and others, and the same day gave a deed to the premises to Mary J. Stockton, she taking subject to the mortgage. On November 21, 1895, Mary L. Stockton gave a second mortgage to Theodore S. Miller for $3,000, and he on November 25, 1895, assigned the same to Joseph Blumenthal. On June 5, 1896, foreclosure proceedings for nonpayment of interest—the right to demand the principal not being insisted, on—were brought under the first mortgage by Simon Pretzfeld and others, and in those proceedings the summons and complaint named Emma J. Stockton instead of Mary J. Stockton, and as so written they were served on Mary J. Stockton, who did not, however, appear or answer at any time before the judgment or the sale. On June 27, 1896, an affidavit was filed in this foreclosure action in which it was stated that "the summons and complaint herein were duly served on the defendant Stockton; * * * that through inadvertence the defendant Stockton was made party defendant by the name of Emma J.,—whereas her name is in fact Mary J. Stockton." Upon this affidavit, an ex parte order was entered "that the summons and complaint and all other papers herein be amended by striking out the name 'Emma J. Stockton' where the same appears, and inserting in lieu thereof the name 'Mary J. Stockton' as one of the defendants in this action." No amended notice of pendency of action was filed, nor was any amended or supplemental summons issued or served. The cause, by the same order substituting the name of Mary J. Stockton for Emma J. Stockton, was referred to a referee, on whose report judgment of foreclosure and sale was entered ex parte on June 29, 1896, which judgment named Mary J. Stockton, and claimed to bar her and other defendants from all right, title, or equity of redemption in the mortgaged premises. Pursuant to the judgment, the premises were sold by the referee, subject to the mortgage for $43,000, on July 30, 1896, to William H. Siegman, the referee reporting a surplus of $928.75. The referee's deed was dated and recorded August 3, 1896. William H. Siegman, on January 6, 1897, by deed conveyed the premises, with the lien for $43,000 thereon, to Ralph Weil, the defendant. Meanwhile Joseph Blumenthal, who held the second mortgage on the premises, brought surplus proceedings on August 12, 1896, for the surplus which the referee had deposited with the chamberlain, and in September, 1896, obtained the surplus. In those proceedings Mary J. Stockton was duly served, and appeared and consented to the payment of the surplus to the mortgagee of the second mortgage.

In disposing of the objections to the title, the learned trial judge below held that the failure to include the right name of the defendant Stockton was a jurisdictional defect, which rendered the judgment void, and was not cured by the ex parte order amending the summons and complaint by inserting her right name. He up-

held the title, however, upon the ground that she, having appeared in the surplus proceedings, was estopped, as would be those claiming under her, from thereafter assailing the validity of the judgment of foreclosure. We cannot agree with the court below as to the effect of her having appeared in the surplus proceedings and assented to a payment on the second mortgage. The elements of an estoppel are wanting, as will appear by briefly recurring to the facts and dates relating to the title and surplus proceedings. The referee's deed which conferred title on Siegman was dated and recorded on the 3d day of August, 1896, while the surplus proceedings were not commenced till nine days thereafter. If the proceedings in the foreclosure were void, it is difficult to see how the deed to Siegman could be validated by subsequent occurrences. Presumably the title, if then bad, remained so. Certainly Siegman did not take title relying upon anything that Mary Stockton did, because up to that time she had taken no action and there was nothing in the situation which required her to do anything other than remain silent. In other words, she was not forced by any legal duty to take any position with respect to the title, and therefore, as between herself and Siegman, it is impossible to work out an estoppel. And so we might say, with respect to the subsequent grantees, there is nothing appearing to show that by anything that Mary Stockton did they were induced to take title to the property. It therefore all returns to the question of whether the deed in foreclosure conveyed a good title. If the referee gave such a title to Siegman, it must have been by virtue of the foreclosure, and not by virtue of the surplus proceedings; and, if the former were defective, it is difficult to escape the conclusion that the title is defective. The learned trial judge laid much stress upon the fact that the surplus moneys were applied to the payment of Mary Stockton's debt, and that it would therefore be inequitable to permit her thereafter to assert a claim against one who, as a purchaser at the foreclosure, had furnished her with means to liquidate her obligation. Without denying that an equity might thus arise, it could very well be that this would be adjusted, if, upon asserting her claim to the title, she tendered the amount which had been paid in liquidation of her debts, and alleged that she had misapprehended her rights, or had not knowledge of the previous proceedings. In thus submitting her claims to the court, with an offer to do equity, we do not mean to say that she would be successful; but we suggest that the force, due to the fact that the purchaser had furnished her with money to pay her obligations, might be weakened, if she came into court with a tender of the amount, and expressed a willingness to make good to the person thereto entitled the moneys which had been applied on her obligation. If, then, the view taken by the learned judge at special term was right that the judgment in foreclosure was a nullity, we must conclude that the title is bad.

The question as to whether the failure to state the correct Christian name in the summons affects the jurisdiction of the court, and what power the court has to subsequently amend it before judg-

ment, has been many times presented and variously decided. Although it is conceded that under the provision of the Code (section 723) the court has the right in a proper case to allow an amendment of any process, pleading, or proceeding, it is impossible to reconcile decisions bearing upon the question of just when this right may be exercised. Section 723 of the Code states:

"The court may, upon the trial, or at any other stage of the action, before or after judgment, in furtherance of justice, and on such terms as it deems just, amend any process, pleading, or other proceeding, by adding or striking out the name of a person as a party, or by correcting a mistake in the name of a party, or a mistake in any other respect, or by inserting an allegation material to the case; or, where the amendment does not change substantially the claim or defence, by conforming the pleading or other proceeding to the facts proved. And, in every stage of the action, the court must disregard an error or defect, in the pleadings or other proceedings, which does not affect the substantial rights of the adverse party."

Under this broad language it is difficult to exactly define the limits beyond which the power of the court, by way of amendment, may not extend when it has once acquired jurisdiction of the parties. Where the right person has been served with process, and appears, the provision of the Code, supported by numerous decisions, upholds the right to exercise such power in the most liberal way by permitting amendment of the process or pleading in the name or names of the parties, or in any other way required in furtherance of justice. Thus in Munzinger v. Courier Co., 82 Hun, 575, 31 N. Y. Supp. 737, where the defendant, an unincorporated association, was sued as a corporation, and the summons was served on its president, who appeared, it was held that an amendment would be allowed changing the name of the defendant as designated to its correct name. And in Weil v. Martin, 24 Hun, 645, the court, in a foreclosure suit where a person was served as a wife of one of the defendants, permitted amendment inserting the name; but here, too, the party affected by the amendment had appeared. In the case of Carr v. Sterling, 114 N. Y. 558, 22 N. E. 37, where the complaint was duly served and the defendant did not appear, the amount for which judgment was demanded was thereafter amended ex parte to a different figure, for which sum judgment was subsequently taken; and it was held that failure to give the defendant notice of the motion to amend was an irregularity merely. Also, in Bank v. Williams, 9 Civ. Proc. 212, where the defendant had signed a note as "W. H. Williams," and was served in that name, and after time to answer had expired, the summons and complaint were amended by the court ex parte by inserting the name "William" in place of the letter "W," it was held that the motion to set aside the order and judgment, on the ground that the court had not acquired jurisdiction over William H. Williams, should be denied; the defect being merely an irregularity, by which the defendant was not prejudiced. Section 723 of the Code, however, has not been extended by the cases to the length of holding that without the presence of a party in court, and without their having been duly served with process, the court, by an amendment ex parte, can acquire jurisdiction over the party, and thereafter proceed to a judgment which shall take away property. If prop-

erty rights could be thus determined by statute, there would be slight efficacy in that provision to be found in the constitution of the United States and of all the states that one shall not be deprived of "life, liberty or property without due process of law." At common law, and prior to the amendment of section 723 of the Code made in 1877, the power did not exist in regard to allowing an amendment of the name or names of the parties in interest. Since that time, however, it has been freely and liberally exercised pursuant to section 723 of the Code. Although it is not possible to reconcile the decisions, there is a reasonable degree of consistency appearing in them with respect to the right to exercise the power of amendment in any respect, in name or otherwise, where the court has once acquired jurisdiction by the presence of the parties to be affected by the amendment. Here, however, the person served by the wrong name never appeared; and, unless the court obtained jurisdiction, it is difficult to determine upon what principle it could amend and thereafter proceed to determine the rights of the parties. The mode prescribed to obtain jurisdiction is by the issuance of a summons containing the real name of the defendant and the personal service upon the proper person. We are, of course, speaking of the usual and ordinary mode of acquiring jurisdiction by personal service, and not of the alternative, which in special instances is permitted to be followed by publication or substituted service, or by proceeding against the right person under a fictitious name. If here, intending to sue Mary J. Stockton, the summons had included the name of Emma J. Brown, it would not be claimed in a suit intended to affect the former, and in which she was actually served with the summons directed to Emma J. Brown, that the court without her appearance thereby acquired jurisdiction over her. "Emma J. Stockton" may be nearer to the name of the person intended than "Emma J. Brown," yet if it is sufficient merely to have the right person served, regardless of having them correctly designated in the summons, then seemingly there would be nearly as strong argument in favor of sustaining the jurisdiction of the court in one case as the other. Mary J. Stockton would be no more required to attend a summons issued as against Emma J. Stockton than she would be if it was issued against Emma J. Brown. In each instance it is directed to another person. Undoubtedly should she appear under either name, there is authority for holding that the court, having by such appearance acquired jurisdiction, can permit an amendment by inserting the right name.

The respondent insists furthermore that, as the recitals in the judgment showed jurisdiction, the judgment cannot be assailed here, because, as is urged, that would be permitting a collateral attack upon it. The answer, however, to this lies not alone in the fact that on the very face of the judgment it appeared that Mary J. Stockton was not served with any process directed to her, but also that a stipulation as to the facts such as appears herein has a particular effect and bearing upon the rule that recitals in a judgment are not to be attacked collaterally. As said by the court of appeals in Smith v. Trust Co., 154 N. Y. 333, 341, 48 N. E. 553, 555:

"'The presumptions which the law implies in support of the judgments of superior courts of general jurisdiction only arise with respect to jurisdictional facts concerning which the record is silent. Presumptions are only indulged in to supply the absence of evidence or averments respecting the facts presented. They have no place for consideration when the evidence is disclosed or the averment is made.' Galpin v. Page, 18 Wall. 350, 365. When the record of a court of general jurisdiction discloses nothing in regard to the service of process or notice, and no evidence is given upon the subject, jurisdiction over the person will be presumed, because the record itself imports sufficient proof of jurisdiction, without disclosing the different steps by which such jurisdiction was acquired. When it affirmatively appears, however, that any essential step was omitted, the presumption in favor of jurisdiction is destroyed, and a presumption against jurisdiction at once arises."

It is unnecessary, however, for the purposes of this appeal, to extend this discussion further than to show that there is a reasonable doubt as to whether the court acquired jurisdiction of Mary J. Stockton in the foreclosure proceedings so as to entirely cut off her equity of redemption. The learned judge at special term, after a review and citation of many authorities, reached the conclusion that the court did not acquire jurisdiction in the foreclosure suit; and the most the respondent can claim, though fortified by cases of a contrary tenor, is that there are decisions upon both sides of the question, the weight of which, he insists, inclines to his view. In this unsettled condition of decisions, and in the absence of any controlling authority, we cannot say that there is wanting a reasonable doubt as to the marketability of the title. Nor can we reach any practicable settlement of that question which would be binding upon the person to be affected, and thus protect the purchaser; for, as Mary J. Stockton is not a party to this action, she cannot be bound by our decision, and may at any time within the period fixed as the limitation of her right to do so bring an action to recover the property.

In addition to the objections to the title which we have been considering, another serious one grows out of the fact that the foreclosure was for nonpayment of interest, and not to obtain the principal of the mortgage; the prayer being that the property be sold subject to the mortgage, and that the interest due be paid out of the proceeds of the sale. The judgment followed the prayer, and the referee sold accordingly, and, as a result, the original mortgage of $43,000 still remains a lien on the property, and the contract now sued upon requires the purchaser to take title subject to it. Such procedure was in direct violation of section 1637 of the Code, which provides that, when a foreclosure suit is brought, the mortgage must be foreclosed. Whether this violation of the statute is a mere irregularity, as held by the judge below, or a defect fatal to the judgment and the title based upon it, is unnecessary for us to determine, in view of the conclusion which we have reached upon the main question presented on this appeal as to whether the court had jurisdiction. We think that a title based upon such a judgment in foreclosure is not free from reasonable doubt or marketable. And as said in McPherson v. Schade, 149 N. Y. 16–21, 43 N. E. 527, 528:

"A purchaser ought not to be compelled to take property the possession of which he may be obliged to defend by litigation. He should have a title that will enable him to hold his land free from probable claim by another, and one

that, if he wishes to sell, would be reasonably free from any doubt which would interfere with its market value. Vought v. Williams, 120 N. Y. 253, 24 N. E. 195; Shriver v. Shriver, 86 N. Y. 375, 584; Fleming v. Burnham, 100 N. Y. 1, 2 N. E. 905."

This formulation of the rule was made, it is true, in a suit brought by a vendor to compel specific performance; but we have referred to it for the reason that we regard it as a definition enunciated by our court of appeals of what constitutes a marketable title.

We think the judgment must be reversed, with costs, and that the plaintiff should have judgment for a return of the money paid on the contract and expenses of searching the title, with costs in this court and in the court below.

INGRAHAM, J., concurs.

PATTERSON, J. I concur in the result. The consent of Mary J. Stockton to the payment, on account of the second mortgage, of the surplus realized on the foreclosure sale of the first mortgage cannot be regarded as an estoppel, or such an act as would cure the defect of parties in the foreclosure suit on the first mortgage. Upon the other question concerning the misnomer of the defendant Stockton, I concur in the result only in consequence of the force of authority in this state on that subject. Farnham v. Hildreth, 32 Barb. 277; Moulton v. De ma Carty, 6 Rob. 470; Griswold v. Sedgwick, 6 Cow. 456. Were it an original proposition, I should incline to another view. The rule in this state seems to be in conflict with that generally recognized in other jurisdictions. 1 Black, Judgm. § 213, and cases cited; Freem. Judgm. (2d Ed.) § 154, and cases cited. We must, however, follow the law as laid down by our courts. As the defendant Stockton did not appear in the foreclosure suit, and the amendment of the summons and complaint was made without notice to her, and no amended process was ever served upon her, the defect was not cured by the order of amendment.

McLAUGHLIN, J., concurs.