PEOPLE ex rel. DOUGAN v. GREENE, Police Com'r of City of New York.

(Supreme Court, Appellate Division, Second Department. October 14, 1904.)

1. MUNICIPAL CORPORATIONS—POLICEMEN—REMOVAL—PROCEEDINGS.

Where it affirmatively appeared that a deputy police commissioner, before whom proceedings for the removal of a roundsman were had, made no adjudication of guilt, but recommended relator's dismissal, and referred the case to the commissioner for decision, and the conviction was made by the commissioner, the order of dismissal was invalid, since the case could not be tried before one officer, and a conviction rendered by another.

Certiorari by the people, on the relation of William J. Dougan, against Francis V. Greene, as police commissioner of the city of New York, to review relator's dismissal from the position of roundsman. Determination annulled.

Argued before HIRSCHBERG, P. J., and BARTLETT, WOODWARD, JENKS, and HOOKER, JJ.

Louis J. Grant, for relator.
James D. Bell, for respondent.

WOODWARD, J. The relator, who had served on the police force for about 15 years, and whose reputation as such we may assume to have been good, for nothing appears to the contrary, has been removed

from his position as roundsman upon the charge that he had been guilty of "conduct unbecoming an officer"—a very elastic term, depending upon individual conceptions of what belongs to the office of a policeman. In the case now before us the specifications are two in number. One of these is that while the relator was being tried upon a former charge of having failed to pay an indebtedness to one Hobbs, and while the latter was under oath testifying to the state of the account, the relator said, "You are a liar," and the other is that the relator had failed to pay a man named Hobbs the sum of $68.07, and that the relator had stated that he had paid $8 on the account, and that said statement was false. In reference to the second specification it may be said that the evidence does not fairly preponderate that the statement of the relator was false. He says unequivocally that he did pay the $8. He tells how and when he paid it; and Hobbs, who appears to have been persistently following the relator, and endangering his position in the department, says that the relator did not pay him the amount. An officer who came in during the conversation testifies that he heard Hobbs say that he would give relator a receipt in the morning, but this was in a measure consistent with either version of the transaction, for Hobbs testified that relator promised to give him some money in the morning, and the relator says that he gave Hobbs the $8 at the time of the conversation, and promised to give him more in the morning, so that the testimony in reference to the receipt might apply to either of these situations. It is evident, therefore, that the question presented was purely one between two men, both of them having an interest in the matter under consideration, and there is nothing which we find in the record to show that the relator was any more likely to testify falsely than the man who had carried his claim to the police department, and who was coercing payment under a process unknown to the law. It was in reference to this same claim that the original examination before a deputy police commissioner was being held when the relator broke into the examination with the declaration, "You are a liar." This language was addressed to Hobbs, who had contradicted the statement made by the relator that he had paid $8 on the account. While it must be conceded that this is not the language of polite society, and that it was improper in a judicial proceeding, there are circumstances in which words of like import appeal strongly to the average descendant of the Anglo-Saxon race, and courts of record are usually content to administer a reprimand or to impose a reasonable fine for like impulsive conduct on the part of interested parties. The deputy commissioner, however, felt that the case demanded action. He adjourned the proceeding based on the charge that the relator had failed to make payment to Hobbs, and instituted the charges now under consideration, making the charge which he was then investigating a part of the specifications in the new proceeding; and the second deputy commissioner, after hearing the evidence, failed to make any findings as to the guilt or innocence of the relator, but recommended his removal from the force, and that recommendation has been acted upon by the police commissioner.

We are of opinion that the evidence does not warrant a finding that the relator made a false statement in reference to the payment of the

$8. There is as near an exact balance of evidence as it is practically possible to attain, and when we consider the fact that the investigation was conducted by a second deputy, on charges brought by the first deputy, the chances of bias are, in the nature of things, so great that it is not unreasonable to insist that charges which form the basis of a forfeiture of the relator's rights shall be established by a fair preponderance of evidence. There is no doubt, under the evidence, that the relator did, on the occasion of his examination before the first deputy commissioner, say to Hobbs, "You are a liar." This language is, we may assume, unbecoming an officer. He ought not to have disturbed the judicial calm of an investigation into an affair which partakes largely of his own private concerns, modified and extenuated by those duties and obligations imposed by law and the dictates of a common humanity; but we may not forget that even a roundsman is human, and, if his statement is true that he had, in fact, made this payment of $8—and it is quite probable—the impulse of a man, even in the more refined walks of life, would be to challenge the statement of Hobbs to the contrary. We cannot believe that, in the absence of evidence sufficient to establish the second of the specifications in this charge, the police commissioner would have felt justified in imposing the extreme penalty in this case.

But it is not necessary to stand upon this proposition. When the police commissioner or either of his deputies undertakes a trial of a police officer upon charges, he constitutes a court of inferior jurisdiction. There is no presumption of jurisdiction in favor of the acts of inferior courts. An inferior court must, when questioned, show that it acted within its jurisdiction (Yates v. Lansing, 9 Johns. 396, 437, 6 Am. Dec. 290, cited and recognized in Smith v. Central Trust Co., 154 N. Y. 333, 340, 48 N. E. 553; and see, further, authorities there cited), and this requires that the record of such a court should show all facts essential to the jurisdiction (Taber v. City of New Bedford, 135 Mass. 162, 164). When the record shows that the trial is conducted by the police commissioner, there is no question of his powers in the matter; but when the trial is conducted by a deputy commissioner, as in the case now before us, the record should show by what authority the deputy is acting. Section 270 of the Revised Charter of the city of New York (Laws 1901, p. 115, c. 466) provides for the appointment of a police commissioner, who is given the power to appoint, "from the citizens of the United States and residents of the said city, and at pleasure remove, two deputies, to be known as first deputy commissioner and second deputy commissioner. The first deputy commissioner shall, during the absence or disability of the commissioner, possess all the powers and perform all the duties of the commissioner except the power of making appointments and transfers. In the absence or disability of both the commissioner and the first deputy commissioner, the second deputy commissioner shall possess all the powers and perform all the duties of the commissioner except the power of making appointments and transfers." Subsequent sections of the charter provide for the powers of the police commissioner, but in none of them is there any delegation of power to the deputy commissioners to hold trials of subordinate officers, except as they act in the absence of the

commissioner, or by delegation from him provided by section 270. The provision of section 300, p. 127, that "no member or members of the police force except as otherwise provided in this charter shall be fined, reprimanded, removed, suspended or dismissed from the police force until written charges shall have been made or preferred against him or them, nor until such charges have been examined, heard and investi-. gated before the police commissioner or one of his deputies," is not a legislative delegation of power to such deputies, but is merely a recognition of their right to hold such trials under the circumstances set forth in section 270, which alone fixes and determines the status and powers of such deputies. It is necessary, therefore, where a second deputy holds this inferior court, that the record should show the facts giving him jurisdiction to act. It should be shown either that the police commissioner and the first deputy are absent from the city, or disabled to perform this duty, or that the police commissioner, by rules or regulations, has prescribed this as one of the duties of such deputy, or that such deputy has been specially delegated to perform the service. In the absence of such a record, there is nothing on which to base the subsequent action of such deputy or the police commissioner who acts upon the record of such proceeding, for "the rule for jurisdiction is that nothing shall be intended to be out of the jurisdiction of a superior court but that which specially appears to be so; and, on the contrary, nothing shall be intended to be within the jurisdiction of an inferior court but that which is so expressly alleged." Peacock v. Bell, 1 Saund. 73, 75, cited approvingly in Smith v. Central Trust Co., supra. This court, under the statute, consists of the police commissioner. He it is who is given jurisdiction to conduct trials upon charges, and it is only under the conditions named in the statute that the deputies have any authority in the premises, and where the record fails to show the jurisdictional facts it is fatally defective. We find no such facts in the record here presented, and the relator not having been given a trial before the police commissioner, or before a deputy who is shown to have authority to act, and such authority cannot be presumed or inferred (In Matter of City of Buffalo, 78 N. Y. 362, 366), the proceeding is fatally defective, and cannot warrant the removal of the relator.

This result is not contrary to the reasoning or conclusion of this court in People ex rel. Reardon v. Partridge, 86 App. Div. 310, 83 N. Y. Supp. 705. In that case the record recites (folio 81 of the papers on certiorari) that "the police commissioner having, on the 26th day of May, 1902, ordered that First Deputy Commissioner N. B. Thurston be and is hereby directed to try charges preferred against Captain Reardon," and "this matter coming on to be heard on this date the defendant appears in person," etc. "Present: First Deputy Commissioner N. B. Thurston." Here at least was a recital of the jurisdictional facts necessary to give the first deputy jurisdiction, and the question raised in that case was not whether the first deputy had jurisdiction, but whether, he having had jurisdiction of the case in taking the evidence, it was within the power of the police commissioner to step in and complete the record by prescribing the punishment. We held in that case —and properly, we believe—that the policeman, having been convicted before the first deputy commissioner, was brought within the language

of section 302 of the Revised Charter, which provides that the "police commissioner shall have power, in his discretion, on conviction by him or by any court or officer of competent jurisdiction, of a member of the force of any criminal offense, or neglect of duty," etc., to administer certain defined punishments. While there is no reason to doubt that this discretion might be delegated to the deputy who was designated to try the charges under the provisions of section 270 of the Revised Charter (Laws 1901, p. 115, c. 466), no reason suggests itself why the commissioner authorized to try the charges and to administer the proper punishment might not delegate a portion of this power to his deputy, reserving the discretionary power of punishment to himself. This is apparently what was done in the Reardon Case, where the deputy was directed to try the charges. It is true, of course, that a trial generally · contemplates a determination of the issues tried. This court suggested in the subsequent case of People ex rel. Callan v. Partridge, 87 App. Div. 573, 84 N. Y. Supp. 487, that, where the trial occurred "before a deputy commissioner, there should be an express finding one way or the other by that officer declaring the accused guilty or not guilty of the charge against him, and this finding should be set out in writing in the report of the proceedings made to the head of the police department," etc.; but there is nothing in this inconsistent with the idea that the commissioner might properly reserve to himself the discretionary power of measuring out the punishment to be imposed upon the findings thus made and the evidence deduced in support of the same. If the commissioner was absent, or disabled at the time, or if he had fully delegated his powers, both in respect to the trial and the punishment, a different question would be presented; but in the case now before us the difficulty is that the record does not show that any powers have been delegated to the second deputy, or that the conditions necessary to give him jurisdiction under the statute exist, and there is no lack of harmony between the cases to which we have called attention.

The proceedings of the respondent in dismissing the relator from the police service should be reversed, and the relator reinstated in his position, with costs. All concur.

HIRSCHBERG, P. J. I concur in the result. The return alleges that the deputy commissioner was duly authorized to try the charges. But it affirmatively appears that he made no adjudication of guilt. His recommendation that the relator be dismissed from the service might be regarded as equivalent to such an adjudication, in accordance with the dictum in People ex rel. Callan v. Partridge, 87 App. Div. 573, 576, 84 N. Y. Supp. 487, but for the fact that the order of dismissal shows that the case was referred to the commissioner for decision and that the conviction was made by him. The case presented is, therefore, that of a trial before one officer and a conviction by another. See People ex rel. De Vries v. Hamilton, 84 App. Div. 369, 82 N. Y. Supp. 884.