In re BREON LUMBER CO.

(District Court, M. D. Pennsylvania. October 13, 1910.)

No. 1,423, in Bankruptcy.

1. BROKERS (§ 53*)—SALE OF LAND—COMMISSIONS—PROCURING CAUSE OF SALE.
Whether a broker has been the procuring cause of the sale of land depends largely on the continuity of the transaction.
[Ed. Note.—For other cases, see Brokers, Cent. Dig. § 74; Dec. Dig. § 53.*]

2. EVIDENCE (§ 213*)—ADMISSIONS—EFFORT TO SETTLE—EFFECT.
An effort to settle a claim, while ordinarily not to be taken as an admission of liability, may be so regarded when it is necessarily to be implied from it.
[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 745–751; Dec. Dig. § 213.*]

3. BROKERS (§ 56*)—SALE OF LAND—COMMISSIONS.
Bankrupt agreed to pay claimant $10,000 commissions for a sale of certain timber land to a specified purchaser for $200,000. Claimant made various efforts to effectuate the sale, but was unsuccessful, and thereafter the price was modified, and with independent assistance a sale was made to the purchaser named for $130,500. *Held*, that the broker, having been regarded by his principal as instrumental in the consummation of the sale, was entitled to compensation for the reasonable value of his services.
[Ed. Note.—For other cases, see Brokers, Cent. Dig. §§ 85–89; Dec. Dig. § 56.*]

In the matter of the bankruptcy proceedings against the Breon Lumber Company. On exceptions to the report of a referee, rejecting a claim of the Tomb Lumber Company. Exceptions sustained in part.

S. T. McCormick, Jr., for exceptions.
W. R. Deemer and M. C. Rhone, for trustee.

ARCHBALD, District Judge. This is a claim for commissions on the sale of real estate. The Breon Lumber Company, the bankrupt, was the owner of a tract of 5,000 acres in Somerset county, Pa., and in June, 1906, George B. Breon, the treasurer, approached H. C. Tomb, of the Tomb Lumber Company, to see if his company could effect a sale of it. The title was in A. W. Buck, as trustee for certain banks which had made loans to the Breon Lumber Company, but subject to this the property was recognized as belonging to that company. The price put on it was $200,000; that is to say, 5,000 acres at $40 an acre. And it was agreed that, if a sale was made, the Tomb Lumber Company was to get $10,000. The agreement was subsequently put in writing by the following letter:

"Williamsport, Pa., June 25, 1906.
"Tomb Lumber Company, Philadelphia, Pa.
"Gentlemen: Confirming the conversation with you when in Philadelphia, if I sell my Somerset timber lands to the Central Lumber Company, I will pay you $10,000.00 commissions for the sale of the same.
"Yours Truly,                                          Breon Lumber Company,
                                          "By George B. Breon, Treasurer."

Later on, in pursuance of this agreement, Mr. Breon was introduced to Mr. A. P. Woodman, president of the Central Lumber Company,

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

who went out to Somerset county with W. A. Tomb and C. L. Peaslee, representing the Breon Lumber Company, to look over the property. No sale, however, was effected as the result of this visit, and for the time being the negotiations ended. A few months afterwards Mr. Peaslee, on behalf of the Breon Lumber Company, went to Philadelphia, and new negotiations were opened, Mr. Peaslee at that time endeavoring to sell the property on a stumpage basis. But this also was ineffectual. Later in the fall, Mr. Peaslee again took the matter up with the Central Lumber Company, through Mr. Woodman and J. Hector McNeal, an attorney at Philadelphia, and, after somewhat protracted efforts, the property was sold to the Cambria & Somerset Lumber Company, a Pennsylvania corporation formed for the purpose, the whole stock of which was owned by the Central Lumber Company, there being a doubt as to the right of the latter to hold real estate in Pennsylvania on account of being a foreign corporation. The price obtained for the property was $130,500, of which $15,000 was paid in stock of the Central Lumber Company, and the balance in monthly notes, extended over five years. While the sale so consummated was not directly brought about by the Tomb Lumber Company, it was recognized by the Breon Lumber Company that that company was instrumental in selling the land, and that something was due on account of it. And, demand having been made for the $10,000 which was to be paid, a compromise was offered by which the Breon Lumber Company agreed to give a note for $500 and a deed for three houses in Philadelphia. But this was refused, it being found by the Tomb Lumber Company that the houses were incumbered to within $1,500 of their value, which reduced the offer to about $2,000.

Except for the acknowledgment by Mr. Breon that the Tomb Lumber Company was instrumental in the sale of the property, and the implication that it was entitled to something by reason of the offer of settlement, there would be nothing whatever on which to base a claim. So far as appears outside of this, the sale was brought about, not by the Tomb Lumber Company, but by Mr. Peaslee, with the aid of Mr. McNeal, who successfully concluded it. The original effort of Mr Tomb fell through, as did that of Mr. Peaslee, for a sale on a stumpage basis. And with negotiations twice broken off in this way, and twice independently resumed, there would seem to be no place for a claim by the Tomb Lumber Company that they had effected it. But the question after all depends on the continuity of the transaction. 19 Cyc. 251. And this is often better appreciated by the parties than can be made to appear to others. When, therefore, it is testified by Mr. Breon that the Tomb Lumber Company was always understood as having been instrumental in selling the property, it is persuasive of that fact, notwithstanding what has been already alluded to. And this is confirmed by the effort made to settle, which, while ordinarily not to be taken as an admission of liability, may be so, when that, as here, is necessarily to be implied from it. 16 Cyc. 948. The sale, as eventually made, was to the party with whom Mr. Breon was put in touch, and, although the price was modified, and independent assistance had to be brought in to help, it can hardly be doubted, taking all the evi-

dence together, that the sale resulted in the end from that which the Tomb Lumber Company directly contributed.

The claimant is therefore entitled to something, and the only question is how much, as to which it is clear that it is not entitled to $10,-000. So far as appears, Mr. Breon was not authorized to bind his company for any such amount, and while it could not accept the benefit of the arrangement made in its behalf, and repudiate the obligation, it cannot, under the evidence, be said that it did so. The sale as made was made with Mr. Buck, and except as the debts of the company were paid, a matter beyond its control, there is nothing to show that it got anything out of it. Nor do counsel insist on the full $10,-000. This is 5 per cent. on $200,000, the amount which it was hoped would be realized, and that is evidently the way it was arrived at. And, if the sale had been effected by the Tomb Lumber Company unaided, a like percentage of the price obtained would have been naturally expected. But, as already shown, the sale was not brought about by the Tomb Lumber Company alone. It produced a party who ultimately became the purchaser, but it required the efforts of others to conclude the bargain. And, to entitle a broker to commissions on a sale, he must have been actively instrumental in its consummation. 19 Cyc. 251. Five per cent. on $130,000 would be $6,525. But that must be scaled down to allow for what was done by others. A commission of $5,000 under the circumstances would seem to be all that was earned, and this therefore is the amount which will be allowed.

The exceptions are sustained, and the claim is reinstated, but is reduced to $5,000, at which amount it is directed to be allowed to participate in the distribution.