### CLEVELAND-CLIFFS IRON CO. v. GAMBLE.

(Circuit Court of Appeals, Sixth Circuit. December 13, 1912.)

No. 2,240.

1. BROKERS (§ 46*)—RIGHT TO COMMISSION—SALE OF LAND.

An agreement by defendant to pay plaintiff a commission in case it should purchase certain timber land offered for sale by plaintiff as a broker, although without express limitation of time, must be given a reasonable construction, and does not entitle plaintiff to recover the commission where his services had no causal relation to the sale, as where the offer was absolutely and finally rejected, and the matter was taken

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

up anew a year or more later from a new instigation and under different market conditions, and a sale was made after negotiations between different persons representing both parties. '

[Ed. Note.—For other cases, see Brokers, Cent. Dig. § 47; Dec. Dig. § 46.*]

**2. BROKERS (§ 49*)—RIGHT TO COMMISSION—SALE OF LAND.**

Plaintiff as a broker offered to sell a tract of timber land to defendant, stating the owner's net price and what his commission would be in case a sale was made, and suggested direct negotiations between defendant and the owner. The following year the owner notified defendant that the land was withdrawn from the market until it could be thoroughly examined, when a price would be named. Some two or three years after plaintiff's first offer, defendant purchased the land at about the same price. There was evidence tending to support plaintiff's claim that the sale was the result of a renewal of the original negotiations. *Held* that, if such fact were found, plaintiff was not debarred from recovering his commission because such negotiations were not continuous, nor by the fact that in the meantime the owner had given options on a part of the tract to others from which no sale resulted.

[Ed. Note.—For other cases, see Brokers, Cent. Dig. §§ 70–72; Dec. Dig. § 49.*]

**3. CORPORATIONS (§ 425*)—CONTRACTS—AUTHORITY OF AGENT—ESTOPPEL.**

Where plaintiff wrote the president of defendant corporation respecting the purchase of a large tract of timber land which plaintiff was authorized to sell as a broker and was referred to an agent of defendant, "who will take the matter up with you if it seems worth while," defendant was estopped, after it had purchased the land, from denying the agent's authority to make an agreement to pay plaintiff a commission in case the purchase was made, and which agreement was by plaintiff made a condition precedent to disclosing to the agent the land data.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1697–1701, 1705; Dec. Dig. § 425.*]

**4. BROKERS (§ 71*)—CONTRACT FOR COMMISSION—CONSTRUCTION.**

Where plaintiff delivered to defendant's agent a plat of certain timber lands which he offered to sell as a broker, making an agreement for the payment of a commission to him in case the purchase was made, and defendant afterward purchased, through direct negotiations with the owner, a part of the lands shown on the plat, with other lands not so shown, plaintiff was in any case entitled to recover a commission only on the land bought which appeared on the plat and was therefore embraced in his offer.

[Ed. Note.—For other cases, see Brokers, Cent. Dig. § 56; Dec. Dig. § 71.*]

In Error to the Circuit Court of the United States for the Eastern District of Michigan; Henry H. Swan, Judge.

Action at law by Henry Gamble against the Cleveland-Cliffs Iron Company. Judgment for plaintiff, and defendant brings error. Reversed.

W. P. Belden, of Ishpeming, Mich., and Horace Andrews, of Cleveland, Ohio, for plaintiff in error.

G. W. Weadock, of Saginaw, Mich., for defendant in error.

Before DENISON, Circuit Judge, and SATER and SESSIONS, District Judges.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

DENISON, Circuit Judge. The general facts sufficiently appear in the opinion of this court upon the former review. 158 Fed. 49, 85 C. C. A. 379. Upon the second trial, the cause was submitted to the jury, which gave to plaintiff a verdict for his claimed 5 per cent. commission upon the purchase price of the entire 60,000 acres purchased by the Cleveland-Cliffs Company. This company, the defendant below, complains of the trial and judgment upon four chief grounds: (1) That the undisputed evidence showed the final purchase to have been disconnected from plaintiff's initial service, and hence a verdict for defendant should have been instructed; (2) that recovery was permitted upon a theory different from that pleaded by plaintiff and followed earlier in the case; (3) that Redfern, defendant's agent, clearly had no authority to bind defendant by the contract upon which plaintiff relies, or that, at least, the question of authority was for the jury, and that it was error to charge that the authority did exist; and (4) that the verdict was erroneously permitted to include subject-matter not covered by the contract in suit.

1. Plaintiff's services, claimed to pertain to this transaction, were rendered in October and November, 1900. The sale, on which he claims commission, was not agreed upon until April, 1903. It was plaintiff's theory that the negotiations initiated by him resulted in the purchase; it was defendant's theory that such negotiations were terminated by the owner's letter of May 20, 1901, quoted in the previous opinion, and that the dealings which did result in the sale cannot be carried further back than October, 1902, when one of defendant's agents (not connected with Redfern or his department) suggested to Mr. Mather, defendant's president, that it should purchase this tract —or perhaps July, 1902, when Gen. Alger, president of the Manistique Company, the owner, spoke to Mr. Mather on the subject.

[1] We approve the general theory adopted by the court below on this subject and assumed in our former opinion, viz., that plaintiff cannot recover unless his services bore a causal relation to the sale. True, the promise said to have been made by defendant's agent was, in effect, "if we buy this land which you now bring to our attention, we will pay you 5 per cent. commission," and it is true that this promise was without express limitation of time, and can be read to refer to a purchase at any time in the future, no matter how far away. This is not its reasonable construction. Such language could not be intended, by either party, to contemplate a sale which could not be traced as flowing from the offer then made; and it is not reasonable to infer any understanding by either party that if the offer then made was absolutely and finally rejected, and that if then, a year or more later, the matter was again taken up from a new instigation and under different market conditions, plaintiff should nevertheless have his commission.

In the former opinion, and apparently on the trial now under review, the necessary connection, between plaintiff's offer in 1900 and the later negotiations, was found in Gen. Alger's letter of December 23, 1902. The testimony on the second trial clearly shows that the "purchase of our 30,000 acres" which Mr. Millen "brings for consid-

eration" had reference to a proposed sale to some one else; but the same letter continues (not quoted before):

"The application, however, does not cover the railroad. Do you wish to further consider the purchase of the land and the road?"

It thus clearly goes back to some previous negotiations; but in view of the present record, showing not only that the "purchase brought" by Mr. Millen was a proposition from others, but showing that Gen. Alger and Mr. Mather had been corresponding in October and November regarding the purchase of the land and the railroad, we cannot find, in this letter of itself or in the correspondence, any reaching back beyond the conversation between them in July, 1902, which conversation is, in this correspondence, expressly said to be its basis.

It does not follow that there is no connection between plaintiff's offer and the ultimate sale, just because this letter does not of itself furnish the necessary link. It is plaintiff's theory that he first, in October and November, brought this tract to defendant's attention as being suitable for purchase by it; that it then negotiated with the owner until May, 1901, when the owner withdrew the tract from sale, but with notice to defendant that the withdrawal was only temporary and the offer would be renewed; that defendant was so interested that, in preparation for the expected renewal, it made, during the summer of 1901, an extended examination of the lands (probably at large expense and covering long time); that, as the result of this examination, it determined, or became inclined, to buy the lands when the right time should come; that the delay was merely to allow the owner to get more anxious to sell, and each waited for the other; that Gen. Alger's conversation in July, 1902, was what defendant was waiting for, and was, in fact, though not in form, a renewal of the suspended deal; and that Mr. Mather's letter of October, 1902, formally opening the final negotiations, was not merely the result of Gen. Alger's suggestion, but was a step in the development of defendant's plan of purchase formed because of the examination which followed from plaintiff's offer. This theory would entitle plaintiff to recover under such a contract as he claims, if he could convince the jury that it was the true theory rightfully to be inferred from all the facts; and a verdict accordingly would not have been without support. It follows that it was not error to deny defendant's motion for an instructed verdict. However, this theory, the only one justifying a recovery, was not sharply brought to the court's attention by plaintiff's requests nor by the court distinctly put before the jury, and we find no exceptions presenting the matter in this light. Whether, under these circumstances, we ought to reverse on this account alone, we need not consider, as there is, elsewhere, sufficiently formal cause for reversal.

It will be noted that if the examination of the lands which, on this record, tends to make out the essential continuity, did in fact result, as defendant seems to claim, wholly from another source, operating like an intervening cause in the law of negligence, then this examination cannot serve as the necessary tie.

[2] It is next urged that intervening transactions, not appearing in the former record, prevent any recovery. These consist of options for the purchase of these lands or material portions of them, given by the owner in 1901 and 1902, with plaintiff's consent, to other parties; and it is said that, because these are inconsistent with defendant's continuing right to purchase under plaintiff's offer, they amount to a termination of his contract with defendant. We do not so regard the transactions, even if the owner was contingently bound to convey thereunder to others than defendant. Whatever rights plaintiff has here are not based upon the earning of a commission by assisting in negotiations under a fixed and continuing offer until it was finally accepted; they are based upon the theory that he is entitled to an agreed compensation for bringing the parties together so that they might do their own negotiating. This compensation was contingent upon the happening of a sale as the result of such negotiations; but it cannot be fatal that the owner was at the same time carrying on negotiations for sales to others. It is not material to plaintiff's case that defendant's opportunity of purchase should have been maintained unimpaired, so long as it was only suspended and not in fact destroyed. These matters bear on the question of fact whether the sale finally closed between the parties was the consummation of the bargaining begun through plaintiff, or whether that matter was considered abandoned and closed; but they do not, as matter of law, prevent his recovery.

Nor can we imperatively apply the rule of reasonable time and say that more than a reasonable time elapsed. This subject-matter ordinarily bears on the connection between offer and sale, and serves to raise a presumption that the two were connected or were separate; but here there is no room for its application. Plaintiff must show a direct connection along the line we have indicated, or else must fail. A mere nearness in time would not alone prevail against otherwise undisputed evidence showing another origin for the sale; nor is there remoteness of time which of itself would defeat the claim. The issue is sharp and clear. Either the sale had its beginning in July, 1902, and plaintiff had nothing to do with it, or else it followed from plaintiff's offer without any fatal interruption, and in the manner above indicated, and the conversation of July, 1902, had nothing to do with it, except to make an excuse for taking up again the deal temporarily laid aside. One or the other of these things is true. In either case, the question of reasonable time cuts no figure.

Coming to the next matter urged, we cannot find any insuperable obstacle to recovery in the fact that the descriptions of the hardwood lands and the purchase price, as finally fixed, were different from those specified by plaintiff's offer. The hardwood lands specified and those purchased indicate a general identity of tract, and the modification of terms was not beyond the variations which the contract might contemplate.

2. Defendant complains that plaintiff declared, and until the last trial prosecuted his action, upon the theory of a broker's commission for negotiating and consummating a sale; that confessedly he never

did anything after the first offer, had no connection with all the later negotiations, and, indeed, was out of the country much of the time; but that he recovered for the value of his plat and descriptions and information furnished at the beginning. We do not find any serious inconsistency in plaintiff's claims and positions. The differences come rather from artificial classifications sought to be imposed by defendant. It is not important whether plaintiff be called a broker, but there is no reason why those who are in the market to buy land may not say to one who comes as a broker claiming to have a good tract of land for sale that, if the broker will disclose what this tract is and put them in communication with the owners and let them deal directly together, he shall, if the land finally is bought, receive a commission. Such a contract, closed by furnishing the information, is a valid contract, by whatever name it may be called. The point is covered by the opinion on the former review.

[3] 3. Upon the subject of Redfern's authority: The majority of this court is convinced that upon the testimony shown by the present record—that is, upon plaintiff's version of the facts—defendant was not at liberty to deny Redfern's authority to make the alleged agreement, and that the court below was right in disposing of the question arising on such version, as one of law. We base our conviction on the fact that, in answer to plaintiff's letter, Mr. Mather referred him to Redfern, "who will take the matter up with you, if it seems worth while." This necessarily meant, if it seemed to Redfern worth while, and, in determining as to whether it was worth while, Redfern must pass upon the conditions which plaintiff imposed as precedent to "taking it up" at all, so long as such "conditions" were, as here, of a character not so uncommon in similar negotiations as to be clearly beyond the fair and natural expectation of the letter writer. Plaintiff's claim is that, considering together his letter to Redfern and his alleged conversation with Redfern, he substantially made the commission agreement a condition of disclosing his information. The acceptance or rejection of this condition was, as is said in the former opinion, "a necessary thing at the opening of negotiations." It was the duty of defendant's agent to communicate to defendant the condition which had accompanied the offer; and defendant cannot be heard to say either that the condition was not communicated, or that it is not bound by the agent's acceptance under such circumstances. Of course, it was for the jury to say whether such circumstances existed; that is, whether, in fact, plaintiff imposed this condition upon his disclosure.

[4] 4. The tract actually purchased included about 60,000 acres, of which about half was covered with hardwood timber and about half was cut-over lands. The hardwood lands were figured at $5 per acre, and the cut-over lands at 50 cents per acre. The tract mentioned in plaintiff's first letter and in some other correspondence is 30,000 acres of hardwood. When plaintiff went to see Redfern, in November, 1900, he took with him a plat purporting to show the lands he had for sale. He says he talked with Redfern about a tract of 60,000 acres, and he gave Redfern this plat which showed about 60,000 acres, but the 60,000-acre purchase, as concluded, covered only about 30,000

acres of land shown by the plat; in other words, the plat indicated, as part of the tract offered by Gamble, 30,000 acres which defendant did not buy, and defendant bought 30,000 acres which were not on the plat. The probable explanation of this seems to be, although we only infer this somewhat vaguely from the record, that the plat given by the owner to plaintiff and by him furnished to Redfern covered the 30,000 acres of hardwood belonging to the Manistique Company, and 30,000 acres of cut-over lands belonging to some one else, and that, when the negotiations took definite shape, the Manistique Company put in its own cut-over lands along with its own hardwood lands. Upon this trial, plaintiff was allowed to prove that the plat which he gave to Redfern had been given to him by the owner through a blunder, and was allowed to put in evidence a corrected plat showing the same lands which defendant did afterwards buy, though this corrected plat had never come to defendant's notice.

There is no warrant for extending plaintiff's claim over lands not marked on the plat which he delivered to Redfern. No matter if plaintiff did say to Redfern that he was offering all the lands the Manistique Company had in those counties, in the same conversation he proffered the plat as a specific description of the lands about which he was talking, and it is clear that, if a contract had been then and there closed with no further details, defendant would not have been entitled to demand 30,000 acres not shown on the plat. If plaintiff's general theory of fact is correct, then defendant, when about closing the purchase, was bound to remember that upon the lands covered by this bargain with plaintiff it must also pay him his commission. In such case, defendant's officers would have been amply justified, even if they had before them plaintiff's present version of everything which had occurred, in supposing that their bargain referred only to those lands which had been specified on the plat which was the definite materialization of the more general talk.

For the errors in the subject-matter last mentioned, the judgment must be reversed, with costs, and a new trial ordered. We cannot be sure that the present record indicates with certainty the amount of excess thus erroneously embodied in the verdict so as to fix an amount to be remitted by which plaintiff could cure this error; but, if this amount could be ascertained, we would not be inclined to exercise our discretion in so avoiding another trial in a case where, as here, we think the trial which has been had was based upon a misconception of the main issue.