## LERNER *v.* HARVEY.

1. BROKERS—REAL PROPERTY—SALE—PRINCIPAL AND AGENT—COMPENSATION.

Plaintiff, who was engaged in the business of real estate brokerage, interviewed defendant as to the sale of a certain terrace owned by defendant, who fixed a price of $18,000. Plaintiff stated that he would expect a commission. Defendant asked how much and the reply was three per cent. Defendant said he thought two per cent. was sufficient on so large a transaction. No writing was made. The plaintiff introduced one of his customers to defendant, who declined an offer of $15,000 for the realty, saying that $17,000 was the least he would accept. Defendant claimed that he only agreed to pay the commission if plaintiff secured a price of $18,000 for the property. Over a year later defendant sold the terrace to the said purchaser at $17,000. In defense of an action for the commissions for making the sale, it was urged that the contract had terminated by lapse of time. *Held,* that the conflicting testimony with regard to the terms of the oral contract presented a question of fact and whether or not the plaintiff was the procuring cause of the sale was for the jury.[1]

[1]As to when real estate broker is considered as procuring cause of sale. see note in 44 L. R. A. 321.

2. SAME—MODIFICATION OF PRICE—COMMISSION.

   The fact that the owner finally sold the property at a price
   $1,000 less than the agreement called for was not conclu-
   sive of defendant's right to a verdict, upon testimony of
   the plaintiff that he had general authority to secure a cus-
   tomer ready and willing to purchase the property and that
   defendant fixed the price at $18,000, later reducing it to
   $17,500 and, finally, to $17,000; if the jury believed plain-
   tiff's version their verdict was warranted.[1]

Error to Wayne; Mandell, J. Submitted October 11,
1915. (Docket No. 6.) Decided December 21, 1915.

Assumpsit in justice's court by Abraham Lerner
against Fred C. Harvey for broker's commissions.
From a judgment for plaintiff defendant appealed to
the circuit court, where plaintiff obtained a judgment.
Defendant brings error. Affirmed.

*William W. Wicker,* for appellant.

*John D. Harger,* for appellee.

STEERE, J. Plaintiff recovered from defendant in
the circuit court of Wayne county a verdict of $340
as commission on the sale of certain real estate. The
action was commenced in justice's court, and pleadings
were oral. Plaintiff declared in assumpsit on the com-
mon counts, and defendant pleaded the general
issue. The property sold was a terrace of six houses
and the land on which they were located, upon
Theodore street in the city of Detroit. It belonged to
defendant and was sold to a man named Lieberman for
$17,000. Plaintiff's bill of particulars was for a com-
mission of 3 per cent. of that amount. Defendant's
most prominent assignments of error relate to refusal
of the court to grant his motion for a directed verdict

---

[1]The effect upon the right to commission of fact that owner
sells to brokers' customer at reduced price is discussed in notes
in 15 L. R. A. (N. S.) 272, 34 L. R. A. (N. S.) 1050.

in his behalf, refusing requests to charge, and the charge as given.

The alleged contract of brokerage, or agency, was oral. The court left it to the jury to determine what contract, if any, was made, and, if there was a mutual understanding between them, what was done under it. The three witnesses in the case are plaintiff, defendant, and the purchaser. The testimony of plaintiff and defendant cannot be reconciled in important particulars, while that of Lieberman, the purchaser, cannot in all respects be reconciled with itself. From the somewhat confusing and conflicting testimony. of the witnesses the undisputed facts stand out that defendant offered this property for sale at $18,000, and plaintiff, having some kind of agency or authority to sell or produce a buyer for it, hunted up Lieberman as a prospective purchaser, took him to defendant and introduced him as such, thus bringing the eventual buyer and seller together, and ultimately Lieberman bought the property for $17,000.

It is the contention of defendant that their agreement, so far as any contract for a commission was made, consisted of his answer to plaintiff's solicitation for an opportunity to negotiate a sale, that if plaintiff produced a customer ready and willing to pay the sum of $18,000 in cash for this property he would pay him a commission of 2 per cent.; that all efforts of plaintiff and negotiations upon that basis ended in failure over a year prior to the time when he himself sold the property to Lieberman through new and independent negotiations; that, having failed in performance of his express contract, plaintiff can sustain no claim for compensation under an implied one.

Plaintiff's contention is that defendant proposed and agreed without limit of time that if he produced a purchaser who would buy the property at the price which

he then asked or, by inference, any other satisfactory sum, he would pay him a commission; that, acting upon such understanding between them, he found a purchaser and introduced him to defendant, which resulted in a sale of the property at a price satisfactory to defendant; that under the circumstances shown, even though the sale was effected at a lower price than that originally asked, he is entitled to his commission upon the general principle that when a real estate owner has given to a broker authority to sell lands on commission, and himself, without canceling the broker's authority, effects a sale to the party whom the broker has found and brought to him, the commission is earned.

The court submitted the case to the jury with instruction as to the law upon these conflicting theories. Defendant claims the undisputed evidence supports only his theory.

It appears that plaintiff, who testified that he had been in the real estate business about three years, learned in some manner that the property in question was for sale, and who owned it; that some time in July or August, 1912, he went to defendant's office and inquired if it was for sale, telling him that he was working on commission. All that each testified to on direct examination touching an agreement as to a commission, agency, and introduction of the ultimate purchaser (stated in the bill of exceptions in narrative form) is as follows:

Plaintiff testified:

"That he went to Harvey's office in the Moffat Building and asked him if the property was for sale, and Harvey said it was. Harvey asked him how he was working and he replied that he was working on commission. He asked what Harvey would take for the property and Harvey said $18,000. Harvey asked him what commission he asked and he replied 3 per cent. Harvey said that on a big deal he thought 2 per cent.

was enough, and witness replied that when a big deal was made the agents liked to get full commission. He showed the property to a Mr. Lieberman, and then took Lieberman to Mr. Harvey's office. He told Mr. Harvey that Mr. Lieberman was a prospective purchaser. Lieberman said the buildings needed a lot of repairs and $18,000 was too much, and Harvey said the best he would take would be $17,000; $5,000 down, and Lieberman said he would give about $3,000 down."

Defendant testified:

"That Mr. Lerner came to his office and asked him if the property was for sale and the price asked. That he told him the price was $18,000 cash. That he asked Lerner if he wanted to buy it and Lerner told him that he did not, that he was a real estate dealer. That he then asked him what commission he asked, and Lerner replied that the usual commission was 3 per cent. That he told Lerner if he would find a purchaser for $18,-000 cash he would pay him 2 per cent. commission; that he would not pay 3 per cent. commission on a deal of that kind. That Lerner left the office and within three or four days brought Mr. Lieberman and introduced him. That he had never seen Mr. Lieberman prior to that time. That Lieberman asked the price of the property and he told him $18,000. That Lieberman said he would not pay that much, and he and Lerner left the office."

On cross-examination plaintiff testified that the best offer Lieberman then made was $15,000, which defendant would not accept. Lieberman testified that he first learned of the property through plaintiff who took him to defendant's office and introduced him; that witness said he would think it over and let defendant know, and defendant said he had a man who took care of the property whom he would send down to show witness through there; but the man never showed up and after waiting several weeks he went up to see defendant and so informed him; that defendant then gave him a note to a certain number saying, "You go in and that lady will let you look at the property inside," which he did,

and then went down the same week, without plaintiff, "and made Harvey a proposition."

"*Q.* What proposition did you make?
"*A.* I don't remember; I think it was $16,000 or $17,000, and Harvey turned it down; he wanted $17,500, and we finally struck up a deal for $17,000. * * * That he saw Lerner several times after he took him up to Harvey's office; Lerner bothered the life out of him, and he finally told him there was no use bothering him. That Lerner came to him repeatedly and urged him to buy the property. Lerner said he knew several pieces of property and showed him several pieces of other property. Lerner also sold some property for him."

His "finally" was, like other of his statements, somewhat indefinite, but he subsequently stated on cross-examination that they made the "actual bargain" some time in July or August, 1913. His contract to purchase appears to have been signed November 20, 1913. He further testified on cross-examination that he was in defendant's office at the time of closing the deal and had been there about a week or so before, which was the first time he saw defendant after being there with plaintiff, but explains that he was there several times before when defendant was away on his vacation, as a lady in the office informed him. Without going into details it may be said that the testimony of this witness is far from satisfactory as to dates and sequence of events, and an examination of it leads to the impression that his memory often failed to sustain him consistently both as to past events and what he had just previously testified to. Plaintiff testified as to his efforts in negotiating a sale that he saw Lieberman "quite a few times" and tried to prevail upon him to purchase the property at the price offered, and he got him to say he would pay $16,000 for it, but when they talked he was always saying he was "thinking the matter over," and the last time he talked with him and

tried to induce him to buy the property was the last part of June, 1913; that he did not know exactly when Lieberman actually bought the property, but first learned the fact in September or October, 1913, when he was passing by there and saw Lieberman fixing the porches; that he could not exactly remember how many times altogether he talked with Mr. Harvey about this proposition but "it was four times I have seen him personally, I was several times up and telephoned, but could not get him."

Many of the facts testified to by Lerner and Lieberman are denied by Harvey, who claims he did not see either of them for nearly a year after they were in his office together, and did not recognize either of them when they came to him again, and first knew that Lieberman was the man brought to him by Lerner when Lerner came to his office in December, 1913, and told him who he was, claiming a commission for his services in the sale of the property. The credibility of these witnesses as to matters which are in dispute is of course for the jury.

If, as defendant claims and testified, plaintiff's agreement with him and undertaking was limited to selling or finding a purchaser of the property for $18,-000 cash, it is undisputed that he did not produce a purchaser ready, able, and willing to buy the property at the price fixed, and, having failed in such express contract in relation to which his services were performed and to which they must be ascribed, he cannot recover on the theory of an implied contract to pay for them, even though beneficial, and the court so plainly charged the jury. But this record contains testimony which tends to show a contract of general agency in which defendant controlled and modified the selling price.

Plaintiff did not declare upon a special or express contract. His declaration is upon the common counts.

According to his evidence he presented himself to defendant as a real estate agent and inquired if the property in question was for sale, telling him he was working on commission; that defendant said it was for sale and he would take $18,000 for it, asking what commission he expected; that he replied 3 per cent., and defendant told him he thought 2 per cent. was enough on a big deal; that he showed the property to Lieberman and then took him to defendant's office as a prospective purchaser, where, during the course of their conversation while all three were together, defendant stated a price of $17,000 as "the best he would take;" that thereafter he tried to find a buyer at $17,000 and labored with Lieberman from time to time to induce him to purchase the property, he having shown an interest in and offered $15,000 for it; but was unwilling to pay the price asked, though saying he was thinking it over, and about May raised his offer to $16,000; that he saw defendant several times and did not abandon his efforts, that his last talk with Lieberman to induce him to buy the property was in the last part of June, 1913, and in July or August Lieberman bought the property for $17,000, the price defendant had given, when they were all together, as the best he would do.

It appears undisputed that plaintiff was well acquainted with Lieberman and had done other business for him; that he first called his attention to this property, and after the unsuccessful interview in defendant's office did not abandon his efforts or expectation of effecting a sale, but alone followed up the subject, urged the property upon him, and continued efforts to induce him to buy it. In the language of *Brooks* v. *Leathers*, 112 Mich. 463 (70 N. W. 1099), we think that

"it was for the jury to say whether the influence of plaintiff remained, or whether the sale was effected by defendant independently of him."

There was no time limit fixed upon this agency, nor any notice that it was revoked. The inference that the purchase resulted from plaintiff's efforts and influence is not without evidential support.

Whatever contractual relations existed between these parties arose from oral negotiations, the somewhat scant substance of which each gives his version and construction of, varying as to the language used, but both parties accepting the interview as indicating some kind of an agreement. Under such circumstances, and particularly in the light of what was said and done afterwards, it was for the jury to determine and construe the dialogue, find upon what propositions the minds of the parties met, and decide what contract was actually made. There is testimony in this case which, if believed, would sustain the jury in finding that a contract of general agency existed between these parties under which the seller retained control of the price, which he modified during negotiations, and that plaintiff found the purchaser, brought the parties together, and was the procuring cause of sale which, under such a contract, is the meritorious question. *Wood* v. *Smith,* 162 Mich. 334 (127 N. W. 277).

As was said in *Prindle* v. *Allen,* 164 Mich. 553 (129 N. W. 695) :

"That the sale was made at a price lower than defendant was first instructed to ask, is a matter of no moment, if plaintiff's version of the contract was correct" (citing cases).

In that case there was evidence that defendant told plaintiff if the latter would find a purchaser for the former's farm, fixing the price at $16,000, he would pay him a stated commission, and, having at first offered at the price named, to a prospective purchaser whom plaintiff produced, the farm and certain additional crops and personal property as an inducement to

189 Mich.—17.

effect the sale, or the bare farm at $14,500, ultimately sold the property to the same party for $15,500, and it was held that such evidence warranted the jury in finding a contract of ordinary agency in which the vendor controlled the selling price, and the agent, having produced a purchaser who bought the property at a price the owner was willing to accept, had earned his commission.

We think the court in its charge fully and fairly stated the conflicting claims and theories of the respective parties, with correct instructions as to the principles of law applicable to both theories, and by which the verdict should be governed, according as the facts were found to be.

We discover no reversible error, and the judgment is therefore affirmed.

BROOKE, C. J., and PERSON, KUHN, STONE, OSTRANDER, BIRD, and MOORE, JJ., concurred.