VERE, PLAINTIFF AND APPELLANT, *v.* BIANCHI ET AL., DEFENDANTS AND APPELLEES.

APPEAL from the District Court of Mayagüez in an Action for Performance of Contract.

No. 2977.—Decided August 2, 1924.

PRINCIPAL AND AGENT—BROKER—SALE OF PROPERTY.—Where a broker is employed to sell a piece of property and he finds a purchaser ready and willing to buy, if the owner takes the negotiations out of the hands of his broker and concludes the sale either at the same price or at a reduced price, the broker is entitled to a commission.

ID.—ID.—ID.—Even where a specific contract is made, fixing the price and the commission to be paid, yet if the parties finally conclude the transaction on a different basis, the broker is entitled to a reasonable commission or by way of a *quantum meruit.*

ID.—ID.—ID.—When some persons anxious to buy a property contract with an intermediary to negotiate the purchase and agree to pay him a commission in case of success, and finally the purchasers, on their own initiative and with the coöperation of the said agent, whose agency is still in force, and of persons associated with him, effect the purchase for a price that is not excessive, the agent is entitled to a reasonable compensation for his services.

The facts are stated in the opinion.

*Messrs. M. Travieso, Jr., C. Iriarte, Jr.,* and *J. Sabater* for the appellant.

*Messrs. C. Coll Cuchí* and *G. Cruzado Silva* for the appellees.

MR. JUSTICE WOLF delivered the opinion of the court.

We are principally concerned with the following contract:

"Memorandum of Agreement entered into by the Undersigned this ninth day of June.—Mr. Servejean, principal shareholder and, at the same time, representative of other shareholders of the 'Sucrerie Centrale Coloso' of Paris, France, commissioned Mr. Charles Vere, a merchant of San Juan, to negotiate the sale of said company in the following manner:

"6,500 shares @ 100 francs_____    650,000 fcs.
"2,750 bonds @ 460 francs _____ 1,265,000 "

"These shares and bonds make up the whole working capital of said company.

"The purchasers would also assume charge or take over the debt of the corporation amounting to 1,200,000 francs in a bank in France to be hereafter mentioned.

"And Mr. Vere having, in turn, commissioned Messrs. Carlos Cabrera and Cayetano Coll Cuchí to negotiate the deal; and the parties hereto having agreed upon the following conditions: we hereby declare that Messrs. Francisco Bianchi and Miguel Esteves have agreed to make the purchase subject to the following conditions:

"First: To accept the conditions proposed by Mr. Servejean; making a cash payment for the shares and bonds at the rate of exchange ruling on the day the deal is consummated in francs on Paris.

"Second: Taking over the debt of the Bank.

"Third: Payment of a commission to Messrs. Vere, Coll y Cuchí and Cabrera of 132,525 dollars, the third part of which shall be paid in cash and the rest by notes to be given by the purchasers and made payable the 30th day of June, 1917.

"Fourth: If on the day when the principal amount is paid the exchange should exceed 15%, the purchasers shall advance, within the margin denoted by the exchange, a sum sufficient to raise the commission, in toto, to $140,000.

"This agreement is subject to the approval of the transaction in Paris.

(sd.)    Ch. Vere,
Miguel Esteves,
Francisco Bianchi."

The Sucrerie Central Coloso is a mill located at or near Aguadilla, in Porto Rico. It is a fact that Servejean set on foot the negotiation which ultimately resulted in the sale of the said central. Servejean communicated the possibility of the sale to Charles Vere, the complainant in this case, who, in turn, communicated with Coll and Cabrera, and the three of them interested the other defendants in the purchase of the said Central Coloso. Under all the facts and circumstances of this case we have no doubt that Charles Vere was the procuring cause of the said sale. The principal difficulty that we have had is whether his commissions are payable by the defendants, and, if so, what should be the rate of the commissions.

Very shortly after the foregoing contract was signed and after Vere had written and cabled to Servejean asking for an option, then Servejean communicated to defendant through Vere the fact that the contract could not be carried out on the terms therein exhibited, but that the Central Coloso could be bought for the sum of $1,500,000.

Upon the receipt of the information that the terms mentioned could not be carried out, the defendants, through Vere, sent a cable to Servejean offering to come to Paris in order to make slight modifications in the terms of said contract and that, to said proposition, Servejean replied that the voyage was useless.

There is no question that the defendants knew that the original contract could not be carried out. Nevertheless, through Vere they sent a cable to Servejean in which they protested against the abandonment of the contract and notified him that lawyers here thought the Central Coloso could be held responsible on said contract. From this point on, however, it appears that the defendants took up matters directly with Servejean and that Francisco Bianchi went to Paris himself and concluded the purchase for something like $1,480,000.

At no time did the defendants notify Vere that his serv-

ices were no longer required, nor was there any definite break in the continuity of the negotiations. The mere fact of transfer of operations to Paris cannot be construed as a break, inasmuch as the negotiations, instead of being carried out through Vere and subsequently through Servejean, were carried out through Servejean directly. While Servejean was an owner of stock and an influential member in the Central Coloso he did not own or control the whole stock and to a certain extent was a mere intermediary similar to Vere. It is deducible from the records that the defendants understood that Servejean had no full authority and this particularly appears from the contract itself which we have copied, as it made the obligation of the contract to depend upon its approval in Paris. Vere and Servejean between them were the procuring cause of the final purchase. It was Vere, however, who found a purchaser ready, willing and anxious to buy.

The books are full of cases where an agent is employed to sell a piece of property and he finds a purchaser ready and willing to buy, if the owner takes the negotiations out of the hands of his broker and concludes the sale either at the same price or a reduced price yet the broker is entitled to a commission. *McMillin* v. *Beves,* 147 Fed. 218; *In re Breon Lumber Co.,* 181 Fed. 909; *Hoadley* v. *Savings Bank of Danbury,* 44 L.R.A. 321 and note; *Lerner* v. *Harvey* (Mich.) 155 N. W. 427, 428; *Coon* v. *St. Paul Park Realty Co.,* 101 Minn. 391, 394; *Southwick* v. *Swavienski,* 114 N. Y. App. Div. 681, 683; *Lord* v. *U. S. Transportation Co.,* 143 N. Y. App. Div. 437, 455; *Friedenwald* v. *Welch,* 174 Mich. 399, 401; *Cleveland Cliffs Iron Co.* v. *Gamble,* 201 Fed. 329, 331; *Phoenix Securities Co.* v. *Dittmar,* 224 Fed. 892; *French* v. *McKay,* 181 Mass. 485; *Carnes* v. *Finigan,* 198 Mass. 128. Likewise the authorities show that even where a specific contract is made, fixing the price and the commission to be paid, yet if the parties finally conclude the transaction on a different basis, the broker is entitled to a

reasonable commission or by way of a *quantum meruit.* *Lockhart* v. *Hamlin,* 190 N. Y. 132–137; *Sussdorf* v. *Schmidt,* 55 N. Y. 319; *Sturtevant* v. *Fiss et al.,* 173 App. Div. 113; *Boumann* v. *Manhattan Consumer's Brewing Co.,* 97 App. Div. 410; *Phoenix Securities Co.* v. *Dittmar,* 224 Fed. 892, and some of the foregoing cases. In *Crowe* v. *Trickey,* 204 U. S. 228, and in *Carrington* v. *Graves,* 89 Atlantic, 237, whereon appellees partially rely, there are certain general expressions which indicate that the broker, in order to recover commissions, should conclude the contract on the terms specified, but the facts of these cases show that the respective sales were not consummated. It is the consummation of the sale, with the broker as one of the procuring causes, that constitutes the distinction.

We have no doubt in this case that Vere was entitled to a reasonable compensation, but the question has arisen whether the defendants were bound to pay it. This was a case where the defendants were anxious to buy the property. The record clearly discloses, despite some words to the contrary in the contract itself, that the defendants knew that they were not purchasing the whole property, but only a control therein. In the contract as originally written the words that the sale included all the property of Coloso were interlined. Vere says that these words were put in by Coll after the contract was signed. Coll says his recollection is otherwise. That the understanding of the parties was of an entire sale is otherwise negatived and we are quite sure that all the parties understood that the defendants would only obtain a control of the company. What defendants subsequently purchased was the entire property and there is no showing that they did not receive a *quid pro quo* in the said purchase. In other words, it does not appear that in acquiring the whole property the defendants paid an excessive price for the difference between the part they offered to purchase and the whole property. They purchased not only the stocks and bonds originally offered, but more. It is

true that the defendants were called upon to make a much greater outlay of money than was mentioned or called for in the original agreement and this they did at a period when money was at a high rate, namely in the fall of 1916. Independently, however, of all this, the record shows that the whole correspondence between Servejean and Vere was known to the defendants. In this correspondence the fact stands out that Servejean told Vere that he must look for his commissions to the purchasers. Accordingly, the defendants assumed the payment of the commissions to Vere and his associates and they thus made him their agent. This agency, as we have intimated, was never discontinued. It is plainly evident that Vere could not look to Servejean for payment of his commissions, inasmuch as the latter had made it clear to everyone that all expenses were to be paid by the purchasers. At least this was so when the original negotiations began. It is reasonably certain that in concluding the negotiations in Paris the defendants knew that Servejean was not in any way responsible for such a payment and that his whole idea had been to save himself and his principals from the payment of any such commission. Under the whole circumstances we think the defendants are bound to pay a reasonable commission.

If a broker is selling property and the purchaser finally only agrees to buy half, the broker ordinarily would be entitled to a commission on the part sold. An inverse line of reasoning might perhaps apply to the case where purchasers who expected to spend something over $600,000 are called upon to expend more than twice as much and buy twice as much as they were originally willing and ready to buy. In determining the compensation we need not consider Coll and Cabrera, inasmuch as they have abandoned all claims to the commission by not joining with Vere, and he is in no way responsible to them. Under the original contract among the three brokers Vere was entitled to receive $70,000. Given the variation from the terms of the

contract and given the fact that defendants were put to extra expense and trouble in going to Paris, we think a reasonable compensation would be the sum of $25,000.

*Reversed and substituted.*

Justices Aldrey and Hutchison concurred.

Mr. Chief Justice Del Toro dissented.

Mr. Justice Franco Soto took no part in the decision of this case.

DISSENTING OPINION OF MR. CHIEF JUSTICE DEL TORO.

I do not concur in the reversal of the judgment appealed from. In my opinion it should be affirmed because the evidence shows clearly that the contract entered into between Vere and the Successors of Bianchi, which would have entitled Vere to the stipulated commission, never was performed. If the Successors of Bianchi finally acquired the Coloso Central it was due to a distinct negotiation. Both the evidence and the cases cited by the appellant convince me that the doctrine of *quantum meruit* is not applicable as regards the Successors of Bianchi. If so, it might perhaps be applicable as regards Servejean and he has not been made a defendant. In my opinion it is not possible to conclude from the evidence that Vere acted as the agent of the Successors of Bianchi.