VERE, DEMANDANTE Y APELANTE, *v.* BIANCHI ET AL.,
DEMANDADOS Y APELADOS.

No. 2977.—*Visto:* Noviembre 15, 1923.  *Resuelto:* Agosto 2, 1924.

AGENCIA—VENTA POR AGENTE—DERECHOS DEL AGENTE.—Cuando se emplea a un agente para vender una propiedad y encuentra un comprador listo y deseoso de comprar, si el dueño quita la *negociación* de manos del corredor y ultima la venta ya por el mismo precio, o por uno inferior, el corredor, sin embargo, tiene derecho a una comisión.

ID.—ID.—ID.—Aún cuando se celebre un contrato específico, que fije el precio y la comisión que ha de pagarse, sin embargo, si las partes concluyen finalmente la transacción bajo una base diferente, el corredor tiene derecho a una comisión razonable, o a manera de *quantum meruit.*

ID.—ID.—ID.—Cuando algunas personas deseosas de adquirir una propiedad contratan con un intermediario para que gestione la compra conviniendo pagarle una comisión en caso de éxito, y finalmente los compradores por su propia iniciativa y con la cooperación además del interesado, cuya agencia estaba vigente, y de sus relacionados, efectúan la compra por un precio que no era excesivo, el agente tiene derecho a una compensación razonable por sus servicios.

SENTENCIA de *Angel Acosta,* J. (Mayagüez), desestimando la demanda, con gastos, desembolsos y honorarios de abogados.  *Revocada.*

*M. Travieso, Jr., C. Iriarte, Jr.,* y *J. Sabater,* abogados del apelante; *C. Coll Cuchí* y *G. Cruzado Silva,* abogados de los apelados.

EL JUEZ ASOCIADO SEÑOR WOLF, emitió la opinión del tribunal.

Se trata principalmente del siguiente contrato:

"*Memorándum del Convenio celebrado hoy nueve de junio entre los suscriptores.*—Habiendo el señor Servejean, accionista principal y representante a la vez de los demás accionistas de la 'Sucrerie Centrale Coloso' de Paris,, Francia, comisionado al señor Charles Vere, comerciante de San Juan, P. R., para negociar la venta de dicha compañía en la siguiente forma:

"Seis mil quinientas acciones a cien francos, (650,000) seiscientos cincuenta mil francos.

"Dos mil setecientos cincuenta bonos a cuatrocientos sesenta francos, un millón doscientos sesenta y cinco mil francos.

"Estas acciones y bonos constituyen el total del capital activo de dicha compañía.

"Además los compradores se harían cargo de la deuda de la cor-

poración que alcanza a un millón doscientos mil francos en un Banco de Francia que se mencionará.

"Y habiendo el señor Vere a su vez comisionado a los señores Carlos Cabrera y Cayetano Coll Cuchí, para agenciar el negocio; y habiéndose terminado con las partes que aparecen en este contrato en las condiciones que se dirán; por la presente hacemos constar que los señores don Francisco Bianchi y don Miguel Esteves, han convenido en efectuar la compra en las siguientes condiciones:

"Primero.—Aceptar las condiciones propuestas por el señor Servejean, pagando de contado las acciones y los bonos al tipo del cambio del día en que se efectúe la operación en francos sobre París.

"Segundo.—Asumiendo la deuda del Banco.

"Tercero.—Pagando una comisión a los señores Vere, Coll y Cuchí y Cabrera, de (132,525.00) ciento treinta y dos mil quinientos veinte y cinco dólares, de los cuales se pagará una tercera parte de contado y por el resto se darán obligaciones por los compradores pagaderas el día treinta de junio de mil novecientos diez y siete.

"Cuarto.—Si el día de efectuarse el pago de la suma principal el cambio pasare del quince por ciento (15%) los compradores abonarán, dentro del margen que promete el cambio a los vendedores una suma suficiente hasta completar como comisión total la cantidad de ($140,000.00) ciento cuarenta mil dólares.

"Este convenio está sujeto a la aprobación del negocio en París. —(fdo.) Ch. Vere; Miguel Esteves; Francisco Bianchi."

La Sucrerie Central Coloso es una central situada en o cerca de Aguadilla, Puerto Rico. Es un hecho cierto que el Sr. Servejean inició la negociación que finalmente resultó en la venta de dicha central. El señor Servejean comunicó la posibilidad de la venta a Charles Vere, aquí demandante, quien, a su vez, se puso en comunicación con el señor Coll y el señor Cabrera, y los tres interesaron a los demás demandados en la compra de la expresada Central Coloso. En vista de todos los hechos y circunstancias de este caso, no tenemos duda alguna de que el señor Charles Vere fué el factor determinante de dicha venta. La dificultad principal que hemos tenido es, si sus comisiones deben pagarse por los demandados, y si es así, cuál debe ser el tipo de las comisiones.

Muy poco tiempo después de haberse firmado el anterior contrato y luego que Vere había escrito y cablegrafiado a Servejean pidiéndole una opción, entonces el señor Servejean comunicó al demandado por conducto del Sr. Vere, el hecho de que no podía llevarse a efecto el contrato en las condiciones que allí se expresaban, pero que podía comprarse la Central Coloso por la suma de $1,500,000.

Al recibirse la información de que las condiciones indicadas no podían llevarse a cabo, los demandados, por medio del Sr. Vere enviaron un cable a Servejean ofreciéndole ir a Paris para hacer ligeras modificaciones en los términos del expresado contrato y que a esa proposición contestó Servejean que el viaje era inútil.

No hay duda alguna de que los demandados sabían que el contrato original no podía llevarse a efecto. Sin embargo, por conducto del Sr. Vere enviaron ellos un cable a Servejean en el cual protestaban contra el abandono del contrato y le notificaban que los abogados aquí creían que la Central Coloso podía quedar responsable por dicho contrato. De aquí en adelante, sin embargo, consta que los demandados se entendieron directamente con Servejean y que el mismo Francisco Bianchi fué a París y ultimó la compra por $1,480,000, más o menos.

En ningún momento notificaron los demandados al Sr. Vere de que ya no se necesitaban más sus servicios, ni hubo tampoco ninguna interrupción en la continuación en las negociaciones. El mero hecho del cambio de operaciones a París no puede interpretarse como una interrupción, toda vez que las negociaciones en vez de llevarse a efecto por conducto del Sr. Vere y subsiguientemente por el Sr. Servejean se llevaron a cabo por el Sr. Servejean directamente. Aunque Servejean era dueño de acciones y miembro influyente en la Central Coloso, él no poseía o controlaba todas las acciones y hasta cierto punto era un mero intermediario así como Vere. De los autos se desprende que los demandados entendieron que Servejean no tenía completa autori-

dad, y esto aparece especialmente del mismo contrato que hemos transcrito, pues se hacía depender la obligación del contrato de su aprobación en París. Vère y Servejean entre ellos, fueron los factores determinantes de la compra final. Fué Vere, sin embargo, quien encontró un comprador listo, deseoso y ansioso de comprar.

Los libros están llenos de casos donde se emplea a un agente para vender una propiedad y encuentra un comprador listo y deseoso de comprar, y si el dueño quita la negociación de manos del corredor y ultima la venta ya por el mismo precio, o por uno inferior, el corredor, sin embargo, tiene derecho a una comisión. *McMillin v. Beves,* 147 Fed. 218; *In re Breon Lumber Co.,* 181 Fed. 909; *Hoadley v. Savings Bank of Danbury,* (71 Conn. 599, 42 A. 667) 44 L. R.A. 321, y nota; *Lerner v. Harvey* 189 Mich. 249, 155 N. W. 427, 428; *Coon v. St. Paul Park Realty Co.,* 101 Minn. 391, 394, (112 N.W. 526, 862); *Southwick v. Swavienski,* 114 N.Y. App. Div. 681, 683; *Lord v. U. S. Transportation Co.,* 143 N.Y. App. Div. 437, 455; *Friedenwald v. Welch,* 174 Mich. 399, 401, (140 N.W. 564); *Cleveland Cliffs Iron Co. v. Gamble,* 201 Fed. 329, 331; *Phoenix Securities Co. v. Dittmar,* 224 Fed. 892; *French v. McKay,* 181 Mass. 485, (63 N.E. 1068); *Carnes v. Finigan,* 198 Mass. 128, (84 N. E. 324). Asimismo las autoridades muestran que aun cuando se celebre un contrato específico, que fije el precio y la comisión que ha de pagarse, sin embargo, si las partes concluyen finalmente la transacción bajo una base diferente, el corredor tiene derecho a una comisión razonable, o a manera de *quantum meruit. Lockhart v. Hamlin,* 190 N. Y. 132–137, (82 N.E. 1094); *Sussdorf v. Schmidt,* 55 N.Y. 319; *Sturtevant v. Fiss et al.,* 173 App. Div. 113; *Boumann v. Manhattan Consumers Brewing Co.,* 97 App. Div. 410; *Phoenix Securities Co. v. Dittmar,* 224 Fed. 892, y algunos de los precedentes casos. En *Crowe v. Trickey,* 204 U.S. 228 (27 S. Ct. 275, 51 L. ed. 454) y en *Carrington v. Graves,* (121 Md. 567) 89 Atlantic 237, en los cuales se fundan en

parte los apelados, existen ciertas expresiones generales que indican que para que el corredor pueda recobrar comisiones debe terminar el contrato en los términos convenidos, pero los hechos de estos casos muestran que las respectivas ventas no se consumaron. Es la consumación de la venta con el corredor como uno de los factores determinantes, lo que constituye la distinción.

No tenemos duda en este caso, de que el Sr. Vere tenía derecho a una compensación razonable, pero ha surgido la cuestión de si los demandados estaban obligados a pagarla. Este es un caso en el cual los demandados estaban ansiosos de comprar la propiedad. Los autos revelan claramente, a pesar de algunas palabras en contrario en el mismo contrato, que los demandados sabían que ellos no estaban comprando toda la propiedad, sino únicamente un control en ella. En el contrato, como fué originalmente redactado, las palabras de que la venta incluía toda la propiedad de Coloso estaban intercaladas. El Sr. Vere dice que estas palabras se pusieron por el Sr. Coll después de firmado el contrato. El Sr. Coll dice que lo que recuerda es de otro modo. Que el entendimiento de las partes era de una venta completa está de otro modo negado y estamos enteramente seguros de que todas las partes entendieron que los demandados sólo obtendrían un control de la compañía. Lo que los demandados compraron subsiguientemente fué toda la propiedad y no hay nada que demuestre que ellos no recibieron un *quid pro quo* en la referida compra. En otras palabras, no consta que al adquirir toda la propiedad, los demandados pagaron un precio excesivo por la diferencia entre la parte que ellos ofrecieron comprar y toda la propiedad. Ellos compraron no solamente las acciones y bonos ofrecidos originalmente, sino más. Es verdad que los demandados estaban obligados a hacer un desembolso de dinero mucho mayor que el especificado o requerido en el primitivo contrato y que hicieron esto en una época en que el dinero estaba a un alto tipo, o sea en el otoño de 1916. Sin embargo, inde-

pendientemente de todo esto, los autos muestran que toda la
correspondencia entre Servejean y Vere era conocida por
los demandados. En esta correspondencia resalta el hecho
de haber dicho Servejean a Vere que él debía pedir sus co-
misiones a los compradores. Los demandados al efecto asu-
mieron la obligación de pagar las comisiones a Vere y sus
compañeros y ellos lo nombraron de este modo su agente.
Esta agencia, como hemos indicado, nunca se terminó. Es
enteramente claro que Vere no podía ir donde Servejean
para que le pagara sus comisiones, toda vez que este último
había hecho saber a todo el mundo que todos los gastos se-
rían satisfechos por los compradores. Por lo menos esto
fué así cuando empezaron las negociaciones primitivas. Es
razonablemente cierto que al terminarse las negociaciones en
París los demandados sabían que Servejean no era respon-
sable en manera alguna de tal pago y que toda su idea ha-
bía sido evadirse él y sus principales del pago de semejante
comisión. En vista de todas las circunstancias creemos que
los demandados están obligados a pagar una comisión razo-
nable.

Si un corredor está vendiendo una propiedad y el com-
prador conviene finalmente en sólo comprar la mitad, el co-
rredor por lo general tendría derecho a una comisión por
la parte vendida. Un razonamiento contrario podría quizás
aplicarse al caso en el cual los compradores que esperaban
gastar algo más de $600,000 se ven obligados a emplear más
del doble de esa suma y comprar dos veces más de lo que
primeramente deseaban y estaban listos a comprar. Al de-
terminar la compensación no es necesario considerar a los
señores Coll y Cabrera puesto que ellos han abandonado
cualesquiera reclamaciones de comisión por no asociarse al
Sr. Vere, quien en manera alguna es responsable a ellos.
Bajo el contrato original celebrado entre los tres corredores,
el señor Vere tenía derecho a recibir $70,000. Dada la va-
riación de los términos del contrato y en vista del hecho de
que los demandados tuvieron que incurrir en gastos extra-

ordinarios y molestias al ir a París, creemos que *la suma de $25,000 sería una compensación razonable.*

El Juez Presidente Sr. del Toro disintió.

El Juez Asociado Sr. Franco Soto no intervino en la resolución de este caso.

OPINIÓN DISIDENTE DEL JUEZ PRESIDENTE SR. DEL TORO.

No estoy conforme con la revocación de la sentencia apelada. A mi juicio debe confirmarse porque la prueba demuestra de modo evidente que el contrato celebrado entre Vere y los demandados Sucesores de Bianchi que hubiera dado a Vere derecho al cobro de la comisión pactada, jamás fué cumplido. Si Sucesores de Bianchi adquirieron finalmente la Central Coloso, se debió a una negociación distinta. Tanto el resultado de las pruebas como el estudio de los casos citados por la propia parte apelante, me convencen de que la doctrina de *quantum meruit* no es aplicable en cuanto a Sucesores de Bianchi. De serlo, lo sería quizá en cuanto a Servejean y éste no ha sido demandado. A mi juicio no es posible concluir de un examen de la prueba que Vere actuara como agente de Sucesores de Bianchi.